# Exhibit B

Edgar Cataxinos (7162)
 cataxinos@mcpc.law
James E. Magleby (7247)
  magleby@mcpc.law
Jennifer Fraser Parrish (11207)
  parrish@mcpc.law
**MAGLEBY CATAXINOS, PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff Pura Scents, Inc.

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PURA SCENTS, INC., a Delaware corporation,** | **AMENDED COMPLAINT AND JURY DEMAND** |
| **Plaintiff,** | |
| **v.** | |
| **ATMOS FRAGRANCE, INC., a Delaware corporation, KRISTEN KNIGHT, an individual,** | **Case No.:  2:24-cv-958** |
| | **Honorable Ted Stewart** |
| David L. Mortensen (#8242) | **Magistrate Judge Daphne A. Oberg** |
| ⎯ Email: dmortensen@foley.com | |
| Tanner B. Camp (#17805) | |
| ⎯ Email: tcamp@foley.com | |
| Michael A. Manookin (#15667) | |
| ⎯ Email: mmanookin@foley.com | |
| Charles D. Morris (#18058) | |
| ⎯ Email: charlie.morris@foley.com | |
| FOLEY & LARDNER LLP | |
| 95 S. State Street, Suite 2500 | |
| Salt Lake City, UT 84111 | |
| Telephone: 801.401.8900 | |

|  |  |
|---|---|
| *Attorneys for Pura Scents, Inc* **Defendants.** | |

**IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH**

| | |
|---|---|
| PURA SCENTS, INC., a Delaware corporation, | **COMPLAINT AND JURY DEMAND** |
| Plaintiff, | |
| v. | Case No. _____ |
| ATMOS FRAGRANCE, INC., a Delaware corporation, KRISTEN KNIGHT, an individual, | The Honorable _____ |
| Defendants. | |

Plaintiff Pura Scents, Inc. ("Pura") complains, petitions, and alleges against defendants Atmos Fragrance, Inc. ("Atmos") and Kristen Knight ("Knight") (collectively, "Defendants") as follows:

2

4880-6310-6551.13

## INTRODUCTION

0.1.    Pura is an innovator that has transformed the way consumers experience scent in their homes. Since its founding, Pura has dedicated itself to developing revolutionary products that merge fragrance with smart home technology.

0.2.    Among Pura's achievements was the first app-controlled fragrance diffuser (the "Pura Diffuser"), which allows users to adjust fragrance types and intensity levels from their smart devices. With this and other products, Pura has set itself apart from competitors and become a pioneer in the smart fragrance industry.

3.    Pura obtained multiple patents on its technology and products, described below (the "Patents").

0.4.    Since its founding in 2014, Pura has also established relationships with potential investors and strategic partners to accelerate its growth and bring its vision to fruition. As is customary, Pura shared certain confidential and proprietary information with these trusted parties under commitments and assurances that the partners would keep the information confidential.

0.5.    Among those parties were persons named Tyson Andrus, Jeremy Andrus, and Aaron Derose (the "Investor Individuals"), who were given access to Pura's sensitive financial information, business plans and strategies, technological innovations, and proprietary product designs through their involvement or employment with Pura's investors. These investorsThe Investor Individuals and associated entities understood this information was confidential and competitively sensitive, and agreed to keep this

3

information confidential and to cause their employees and consultants to keep it confidential as well.

0.6.    Another of these parties was Kristen Knight. Ms. Knight was an independent contractor and consultant of Pura. Like the Investor Individuals, she had access to some of Pura's most sensitive proprietary information and agreed to keep that information confidential.

**VII.   But these individuals did not uphold their obligations and commitments to Pura. Instead, they exploited the confidential information they obtained from Pura to launch a competing company, Atmos.**

7.    Founded in 2022,In 2024, Pura discovered that Atmos recentlyhad introduced a product line that includes a smart fragrance diffuser, fragrance vials, and a mobile application ("app") that are nearly identical to Pura's products.

8.    Pura also discovered that Knight and Tyson Andrus were co-founders of Defendant Atmos, and that Derose was a director.

9.    Based on publicly available information and a careful review, Atmos's products unlawfully incorporate Pura's patented technology.

0.10.   Further, on information and belief, Atmos has misappropriated itsPura's confidential and trade secretssecret information and has used and is using it to advance its business and to harm Pura's competitive advantage. In other words, rather than invest the necessary time and money to bring a product to market and build a brand over many years (like Pura did), Atmos decided to copy Pura and shortcut its way into

4

the market.

0.11.    Pura gave Atmos notice of its unlawful conduct and infringement of Pura's intellectual property. Atmos disregarded that notice and continued to use Pura's patented technology and confidential and trade secrets information. These actions are causing irreparable harm to Pura's business, reputation, and competitive position in the market. Thus, Pura had no choice but to seek relief from the legal system to protect its interests.

### THE PARTIES, JURISDICTION, AND VENUEJURISDICTION, AND VENUE

0.12.    Plaintiff Pura Scents, Inc. is a Delaware corporation with its principal place of business in Pleasant Grove, Utah.

0.13.    Defendant Atmos Fragrance, Inc. is a Delaware corporation, with its principal place of business in Salt Lake City, Utah.

0.14.    Defendant Kristen Knight is an individual who, on information and belief, resides in Utah County, Utah.

0.15.    The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1338(a), as this action arises under federal statutes relating to patents. Additionally, the Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Defendants' actions violate the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. The Court has supplemental jurisdiction over Pura's state law claims pursuant to 28 U.S.C. § 1367 because the claims are integrally related to Pura's federal claims and stem from a common nucleus of operative facts. Resolving all claims in one forum

promotes judicial efficiency and economy.

0.16.   This Court has personal jurisdiction over Defendants because they are domiciled in Utah.

0.17.   This Court also has personal jurisdiction over Defendants pursuant to Utah Code § 78B-3-205 because Defendants have transacted business and caused injury within the State of Utah. Defendants transact substantial business with entities and individuals in Utah by, among other things, committing acts of patent infringement and misappropriating Pura's trade secrets through their import, manufacture, distribution, or sale of products in Utah. This dispute arises from Defendants' contacts with this District, and Defendants have purposefully availed themselves of the Utah forum. Thus, requiring them to litigate this matter in this Court does not offend traditional notions of fair play and substantial justice and complies with the Due Process Clause of the United States Constitution.

0.18.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Pura's claims occurred in this District. Venue is also proper under 28 U.S.C. § 1400 because Atmos has committed acts of patent infringement in this District, and Atmos has its principal place of business in this District.

## GENERAL ALLEGATIONS

**Pura's Business**

0.19.   Richie Stapler and Bruno Lima founded Pura in 2014. Since then, Pura

has become a market leader and revolutionary in the fragrance industry.

0.20.   Over the past decade, Pura has invested countless hours and millions of dollars to develop innovative products that combine fragrance with smart home technology. Among its groundbreaking products is the world's first app-controlled fragrance diffuser (i.e., the Pura Diffuser), which allows users to adjust fragrance types, intensity levels, and schedules from their smart devices.

0.21.   Pura also developed functional fragrance vials for use in the Pura Diffuser. The fragrances consist of Pura's own unique scents and those of Pura's partners, such as Capri Blue, Anthropologie, and Studio McGee.

22.    Pura collaborates with these partners — - top perfumers and luxury fragrance brands around the world — - to offer consumers a unique fragrance experience for their homes and cars.

0.23.   Consumers can purchase Pura's products from Pura's website (or the websites of Pura's partners) and select retailers around the country. They can also sign up for fragrance subscriptions and receive their favorite scents at regular intervals.

0.24.   To maintain its competitive edge and position as a market leader, Pura has established a robust portfolio of patents and several trade secrets. These patents and trade secrets are the result of years of research, development, operations and experience, and substantial financial investment.

0.25.   Pura's success is built, in part, on its commitment to protecting its trade secrets and confidential business information. To this end, Pura enters confidentiality

7

agreements with parties, including independent contractors, who have access to Pura's confidential and other proprietary information.

**Pura and ~~Ms.~~ Knight Enter an Independent Contractor Agreement**

26.    As noted, Knight and Tyson Andrus are co-founders of Defendant Atmos.

27.    However, before co-founding Atmos, Knight was an independent contractor for Pura, gaining access to its confidential and trade secret information.

~~0.~~28.    On April 14, 2021, Pura and ~~Ms.~~ Knight entered into an Independent Contractor Agreement (the "Knight Agreement").

~~0.~~29.    ~~Ms.~~ Knight's responsibilities as an independent contractor included managing Pura's Ambassador Program. In that role, ~~Ms.~~ Knight had access to much of Pura's confidential business and trade ~~secrets~~secret information, including business strategies, product development plans, marketing initiatives, and customer and ambassador information.

~~0.~~30.    The Knight Agreement defined "Confidential Information" as:

[A]ny nonpublic information that relates to the actual or anticipated business, research, or development of Company and any proprietary information, trade secrets, and knowhow of Company that is disclosed to Contractor by Company, directly or indirectly, in writing, orally, or by inspection or observation of tangible items. Confidential Information includes, but is not limited to, research, product plans, products, services, customers lists, development plans, inventions, processes, formulas, technology, designs, drawings, marketing finances, and other business information, including the existence and terms of this Agreement.

~~0.~~31.    The Knight Agreement prohibited ~~Ms.~~ Knight from disclosing or using

8

Pura's Confidential Information "during and after the term" of the Knight Agreement for "any purpose other than the performance of Services" on Pura's behalf.

0.32.   The Knight Agreement also obligated Ms. Knight to take all reasonable precautions to prevent the unauthorized disclosure of Confidential Information.

### Ms. Knight Gains Access to Pura's Confidential and Trade Secret Information

0.33.   Pura's Ambassador Program operated in connection with Pura's marketing team.

0.34.   Ambassadors were generally Pura customers or fans that applied and signed up to act as small-scale influencers. As part of the program, the ambassadors would receive free or discounted products from Pura and then post and promote those products on their social media platforms. The ambassadors would also receive commission codes to share on their platforms that would allow them to receive commissions when consumers used the codes and purchased products from Pura.

0.35.   The Ambassador Program ran from 2019 to 2023, and Pura intends to restart the program (or one like it) soon.

0.36.   During her engagement with Pura, Ms. Knight worked closely with Pura's employees to develop and refine the Ambassador Program. Her work included finding new ambassadors, creating incentives, and running campaigns for the program.

0.37.   Ms. Knight's work required significant access to Pura's confidential and trade secretssecret information, including but not limited to Pura's Shopify platform and

4880-6310-6551.13

Ambassador Program database.

0.38.   During her engagement, Ms. Knight also had access to Pura's Shopify platform, which includes information regarding Pura's confidential sales and financial data, customer purchase histories and demographics, marketing performance analytics, and purchasing trends.

0.39.   Ms. Knight also had access to Pura's Ambassador Program database. This database included valuable information regarding the program, including a compiled list of the ambassadors that have worked with Pura and information regarding Pura's marketing strategies. The database reflects significant investments in relationship building, incentive design, and campaign management, allowing Pura to maintain brand loyalty and visibility in the smart fragrance industry.

40.    OnAtmos has launched its own influencer program, similar to that of Pura.

41.    For example, the Atmos Fragrance website contains the following:



10

[https://atmosfragrance.com/pages/collab?srsltid=AfmBOorU8piXgxrW3jjG9iqfJXx_PjU0 O0l7CCUnCJ9KJo09sCwMd-2V].

42.   Pura's confidential and trade secret information and belief, despite her contractual obligations, Ms. provided a roadmap for competition with Pura.

43.   Knight's position with Atmos is such that it led to and will continue to lead to the use or disclosure of Pura's trade secrets.

0.44.   Knight laterhas thus necessarily used and disclosed and used thisPura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy.

**The Investor Individuals Explore Investing in Pura**

45.   Both Kickstart and Tamarak haveTwo long-standing relationships with Pura and are considered, "major investors" in the company. Pura are Kickstart Seed Fund and Tamarak Capital.

0.46.   Pura's Amended and Restated Investors' Rights Agreement (the "Investors' Rights Agreement") defines "major investors" as investors holding a certain number of the company's shares. The Investors' Rights Agreement, which governs the rights and responsibilities of Pura's investors, contains strict confidentiality provisions prohibiting the disclosure or misuse of Pura's confidential information.

0.47.   For example, under Section 3.4 of the Investors' Rights Agreement, Pura's investors are bound by confidentiality obligations to protect Pura's sensitive business

information. This section provides that investors and their representatives shall "not disclose, divulge, or use for any purpose (other than to monitor its investment in the Company) any confidential information obtained from the Company pursuant to the terms of this Agreement." It also explicitly prohibits the disclosure of confidential information to third parties, including competitors, except in limited circumstances, such as disclosures required by law or to attorneys, accountants, or other professionals helping with the investor's investment.

0.48.   The confidentiality obligations in Section 3.4 highlight the importance Pura placed on ensuring that its proprietary information remained secure. Among other things, the obligations help prevent Pura's confidential and proprietary information from falling into the hands of Pura's competitors and being used to harm Pura's interests. These safeguards are critical to Pura's ability to build trust with its investors, while maintaining its position in the marketplace.

0.49.   The Investors' Rights Agreement also requires investors to inform any permitted recipients of confidential information, such as affiliates or prospective purchasers, that the information is confidential and to require such recipients to maintain the information's confidentiality. By mandating that investors impose equivalent obligations on their affiliates, the agreement reinforced Pura's right to control how the investors used and shared the company's sensitive information.

0.50.   The Investors' Rights Agreement affords Major Investorsmajor investors greater access to Pura's confidential information than regular investors. Kickstart also

4880-6310-6551.13

holds a board seat on Pura's Board of Directors, giving its representative on the board access to Pura's sensitive board materials. These materials contain some of Pura's most valuable confidential and proprietary information, such as marketing strategies, competitive analyses, licensing arrangements, future product development plans, and detailed financial projections.

XLV.  Mr. J. Andrus was an investor in Kickstart, and Mr. T. Andrus was a member of Kickstart's Investor Committee. On information and belief, members of Kickstart's Investor Committee evaluate and monitor Kickstart's investments and have access to sensitive information about the companies in which Kickstart invests.

XLVI.  Mr. Derose was a partner at Tamarak Capital, Pura's other Major Investor.

0.51.  By virtue of their relationships and positions at Kickstart and Tamarak, the Investor Individuals had access to the confidential and proprietary information that Pura shared with its investors. They knew thisThe Investor Individual knew and understood that Pura's information was confidential and critical to Pura's success in the marketplace, and that they had an obligation (flowing from, among other things, the Investors' Rights Agreement) to refrain from using or disclosing the information, especially to or for the benefit of Pura's competitors or to harm Pura.

52.  On information and beliefJeremy Andrus was an investor in Kickstart, and Tyson Andrus was a member of Kickstart's Investor Committee.

13

53.     Members of Kickstart's Investor Committee evaluate and monitor Kickstart's investments and thus necessarily have access to sensitive information about the companies in which Kickstart invests.

54.     Derose was a partner at Tamarak Capital, another major investor.  Derose also evaluates and monitors Tamarak's investments and thus necessarily has access to sensitive information about the companies in which Tamarak invests.

55.     By virtue of their relationships and positions at Kickstart and Tamarak, the Investor Individuals accessed Pura'shad access to the confidential and trade secretsproprietary information through their involvementthat Pura shared with Pura'sits investors and eventually disclosed it to and used it to help Atmos establish ., including financial information.

56.     For example, one of the Individual Investors received a slide deck on Pura's business operations and develop products in , containing some of its most critical and competitively sensitive marketing, product, and financial information.

57.     Subsequently, one of the Investor Individuals informed a Pura representative that the decision to launch Atmos was inspired by the revenue figures in the slide deck.

0.58.   Pura's confidential and trade secret information provided to the Investor Individuals, including in the slide deck, provided a roadmap for competition with Pura.

59.     The position held by Tyson Andrus and Derose are such that they will inevitably led to and will continue to lead to the use or disclosure of Pura's trade

14

secrets.

60.     Tyson and Derose have thus necessarily used and disclosed Pura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy.

**The Investor Individuals and Ms. Knight Launch Atmos**

61.     Despite their obligations to Pura, the Investor Individuals and Ms. Knight eventually teamed up to form a new company to compete with Pura. The company,

0.62.   In 2024, Pura discovered that Atmos, entered the market and began selling its had introduced a product line that includes a smart fragrance diffuser, fragrance vials, and a mobile app that are nearly identical to Pura's products in the fall of 2024.

63.     Pura understandsalso discovered that Ms. Knight and Mr. T.Tyson Andrus arewere co-founders of Defendant Atmos, while Mr. J.and that Derose was a director.

0.64.   Pura understands that Jeremy Andrus and Mr. Derose provided financial backing for the company.

0.65.   Atmos offers products — - including a multi-slot diffuser, fragrance vials, and an app—that are virtual copycats of Pura's patented products. These products contain features like adjacent vial bays, heating elements for fragrance intensity control, and app-based customization of scent profiles, all of which read on Pura's patentsPatents.

0.66.   Further, on information and belief, in violation of their obligations to Pura,

15

the Investor Individuals and ~~Ms.~~ Knight disclosed, to Atmos, Pura's confidential or trade secrets information, including information regarding Pura's product designs and development plans, market strategies, business operations, and customers and ambassadors. Indeed, Atmos's rapid product development and market entry relied heavily on this information and would not have been possible without it.

67.    In addition to infringing Pura's intellectual property, Atmos has also sought to poach Pura's employees. ~~Just recently, Ms.~~

~~0.~~68.   For example, Knight, acting on behalf of Atmos, contacted Hope Freeman, a key member of Pura's fragrance development team, to recruit her to Atmos. Ms. Freeman's expertise in hedonics testing is critical to Pura's success, and Atmos's efforts to lure her away are part of an ongoing concerted strategy to benefit from Pura's decades of research and innovation, harm Pura, and weaken its competitive position.

**Pura's Patents**

~~0.~~69.   Atmos's products infringe on several of Pura's patents.

*The '091 Patent*

~~0.~~70.   United States Patent No. 10,967,091 (the "'091 Patent"), entitled Scent Dispensation, was duly and legally issued on April 6, 2021, by the United States Patent and Trademark Office ("USPTO"). Attached as Exhibit A is a true and correct copy of the '091 Patent.

~~0.~~71.   The '091 patent is generally directed to a unique fragrance dispensing apparatus. The '091 Patent describes, among other things, a device designed to

dispense solutions. The device may include spaces that hold vials of fragrance. The device also includes a heating element. The device can wirelessly connect to a management server to receive control settings. A controller may dispense fragrance based in part on such settings.

0.72.    The inventions described by the '091 Patent are a significant improvement over the prior art technology, presenting a new apparatus for dispensing fragrance through remote wireless control, including data and room attribute information. Prior art technology did not and does not teach such improvements. The inventions of the '091 patent describe non-conventional advancements over prior art scent diffusion technology.

0.73.    Pura is the owner of the entire right, title, and interest in the '091 Patent. Pura holds the exclusive right to sublicense, make, use, develop, sell, offer to sell, and import products covered by the claims of the '091 Patent. Pura also holds the right to assert, defend, and enforce the '091 Patent.

*The '601 Patent*

0.74.    United States Patent No. 11,213,601 (the "'601 Patent"), entitled Fragrance Intensity Control Mechanism with PID Control, was duly and legally issued on January 4, 2022, by the USPTO. Attached as Exhibit B is a true and correct copy of the '601 Patent.

0.75.    The '601 Patent is generally directed to a unique fragrance dispensing apparatus. The '601 Patent describes, among other things, a fragrance intensity control

device that may include vial bays that hold and retain vials containing a fragrance solution. The device includes a heating element near the vial bays that is controlled by a controller. Based on settings—which as an example may be configured by a user— the controller may adjust the heating element to control the release of fragrance.

0.76.   The inventions described by the '601 Patent represent an improvement over prior art scent diffusion. As an example, the prior art lacks teachings regarding temperature regulation of specific heating elements at given temperatures. Such inventions represent non-conventional solutions to prior art problems.

0.77.   Pura is the owner of the entire right, title, and interest in the '601 Patent. Pura holds the exclusive right to sublicense, make, use, develop, sell, offer to sell, and import products covered by the claims of the '601 Patent. Pura also holds the right to assert, defend, and enforce the '601 Patent.

*The '886 Patent*

78.    United States Patent No. 12,329,886 (the "'886 Patent"), entitled Enhanced Dispenser Control, was duly and legally issued on June 17, 2025, by the USPTO. Attached as Exhibit C is a true and correct copy of the '886 Patent.

79.    The '886 Patent is generally directed to a unique fragrance dispensing apparatus.  The '886 Patent describes, among other things, a system comprising one or more processors and one or more memory storing instructions that cause the system to perform various operations, including: receiving scheduling data associated with scent dispensing device installed in a particular room and being associated with a particular

4880-6310-6551.13

timeframe within the particular room; determining a schedule associated with the device installed in a the particular room based on the timeframe; monitoring the schedule to determine that the schedule be initiated based on the timeframe; and initiating a dispensing mechanism of the device to emit a scent in the particular room based on the scheduling data. .

80.     The inventions described by the '886 Patent represent an improvement over prior art scent diffusion.  As an example, the prior art lacks teachings regarding temperature regulation of specific heating elements with a particular timeframes within a particular rooms.  Such inventions represent non-conventional solutions to prior art problems.

81.     Pura is the owner of the entire right, title, and interest in the '886 Patent.  Pura holds the exclusive right to sublicense, make, use, develop, sell, offer to sell, and import products covered by the claims of the '886 Patent.  Pura also holds the right to assert, defend, and enforce the '886 Patent.

**Atmos Infringes Pura's Patents**

0.82.   Atmos sells and offers for sale products including diffusers, under the brand name Atmos Diffuser, fragrance vials used in conjunction with such diffusers, the Atmos smartphone app, and other technology employed by Atmos to provide the features described herein, such as cloud or backend platforms (collectively the "Accused Products"). Such products are available for sale on Atmos's website at https://atmosfragrance.com/.

19

0.83.   Atmos has and continues to infringe the claims of the '091 Patent by making, using, importing, selling, and offering for sale in the United States at least the Accused Products, which embody or use the inventions claimed in the '091 Patent.

0.84.   For example, the Accused Products include a diffuser with three holders for fragrance vials with flanges that retain each vial, wherein each vial can be removed and replaced as needed:1





---

1 Screenshots included herein are from a sample Accused Product.

4880-6310-6551.13





0.85.   The Accused Products utilize heating elements to diffuse fragrance from the vials:



21

0.86.   The Accused Products include an app that allows for users to control the release of fragrance at various intensities through the heating elements that correspond to the fragrance vial bays within the diffuser:



4880-6310-6551.13



87.    As shown in the preceding image, a user may select between the "ATMOS Woodland" fragrance or the "ATMOS Citrus Twist" fragrance.  The Accused Products respond to the app's commands and release the selected fragrance from the selected vial, which provides a mechanism for a user, through Atmos's app, to "switch" between fragrances when using the Accused Products.

88.    As discussed in the preceding paragraphs, the Accused Products communicate with an app, requiring a Wi-Fi connection to configure the device and, through that connection, the app can be used to configure the Accused Products to release fragrance from user-selected fragrance vials, including rules for how and when a device diffuses certain fragrances.  As such, the Accused Products communicate with a server, including through at least a Wi-Fi connection and the Atmos app.

0.89.   The Accused Products require a Wi-Fi connection to configure the device. Through the Wi-Fi connection, the app can be used to configure the Accused Products

to release fragrance from user-selected fragrance vials.

0.90.    The release of fragrance includes rule-based settings with several options of input triggers, including location, weather, room, devices associated with a room, and a set of diffusers associated with a room:



0.91.    The app is configurable with other smart home devices, such as lights and electric outlets, that may be controlled by the app and associated with a particular room,

4880-6310-6551.13

such as "Living Room~~:~~."



0.92.   Users may configure the Accused Products to operate with other devices associated with the home and particular rooms.

0.93.   As an example, a user may configure the Accused Products to stop diffusing one fragrance and begin diffusing a second fragrance based on changes in the weather.

0.94.   As another example, a user may configure the Accused Products to release fragrance when a light in the same room is turned on:




0.95.  Additionally, Atmos provides for third-party integrations with services like Google or Amazon, which further provides for automation based on various other devices configured in a user's home, such as lights, thermostats, and more.

0.96.  On information and belief, Atmos has been and is inducing infringement of the '091 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the inventions claimed in the '091 Patent. Specifically, Atmos encourages its users to use the Accused Products in an infringing manner including by setting schedules, scenes, and automation rules through the app that infringe the claims of the '091 Patent. On information and belief, Atmos does so despite knowing about its infringement of the '091 Patent or otherwise being willfully blind to such infringement.

0.97.  As another example, the app provides instructions for integration with third-party software that provides further rules-based automation for releasing fragrances from one of the three fragrance slots included in the Accused products.

4880-6310-6551.13

0.98.   On information and belief, Atmos has been and is continuing to contributorily infringe the '091 Patent by selling or offering to sell the Accused Products, knowing them to be especially made or especially adapted for practicing the invention of the '091 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

0.99.   Atmos has been on notice of infringement since at least September 6, 2024. Despite being on notice of its infringement, Atmos has continued to infringe through the Accused Products. Atmos specifically advertises the use of the app for controlling the Accused Products and for customer interaction and use of the Accused Products. Without configuration through the app, the Accused Products have no substantial non-infringing use.

0.100. Atmos has infringed and continues to infringe the claims of the '601 Patent by making, using, importing, selling, and offering for sale in the United States at least the Accused Products that embody or use the inventions claimed in the '601 Patent.

0.101. For example, the Accused Products include a diffuser with multiple bays for fragrance vials that include heating elements for each bay:







4880-6310-6551.13



~~0.~~102. The app provides users with remote control over release of scents from the three vial bays at intensity levels of 1–5:

0.103. On information and belief, the heating elements include sensors that detect temperature and provide feedback to the heating element control:

4880-6310-6551.13






0.104. The app provides for users to control the intensity of a fragrance, which on information and belief, is controlled by different temperatures from the heating element:

---

30

4880-6310-6551.13



## ATMOS
## Woodland

Woodland envelops you in a fusion of Douglas fir, Canadian balsam fir, Bulgarian pine, Norwegian spruce, Texas cedar, oakmoss & earthy geosmin.

⏻ On

**Intensity**

| 1 | 2 | 3 | 4 | 5 |



## ATMOS
## Citrus Twist

Citrus Twist is like bottled sunshine with tart notes of wild orange, lemon, Green Italian mandarin, tangerine, grapefruit, and a touch of velvety Madagascar vanilla.

⏻ On

**Intensity**

| 1 | 2 | 3 | 4 | 5 |

31




0.105. On information and belief, the Accused Products maintain different temperatures to release different intensities of fragrance. On information and belief, the Accused Products use data from the heating elements and sensors to maintain and control such temperaturestemperature setpoints (from 1-5) for given fragrance intensities to monitor said heating element data and control release of fragrances at selected intensity setpoints.

0.106. On information and belief, Atmos has been and is inducing infringement of the '601 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the inventions claimed in the '601 Patent. Specifically, Atmos encourages its users to use the Accused Products in an

infringing manner including by using the app to control fragrance intensity levels in the Accused Products in a manner that infringes the claims of the '601 Patent. On information and belief, Atmos does so despite knowing about its infringement of the '601 Patent or otherwise being willfully blind to such infringement.

0.107. On information and belief, Atmos has been and is continuing to contributorily infringe the '601 Patent by selling or offering to sell the Accused Products, knowing them to be especially made or especially adapted for practicing the invention of the '601 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

108.    Atmos has infringed and continues to infringe the claims of the '886 Patent by making, using, importing, selling, and offering for sale in the United States at least the Accused Products that embody or use the inventions claimed in the '886 Patent.

109.    For example, the Accused Products include a diffuser with multiple bays for fragrance vials that include heating elements for each bay, which can be operated at particularly defined schedules set by the user via the Atmos app.

110.    The Accused Products contain processors to enable smart features and remote control of fragrance intensity and operation times via smartphone.  The Accused Products require a Wi-Fi connection to configure the device.

111.    The app provides users with remote control over release of scents from the three vial bays at one or more preselected schedule(s):

4880-6310-6551.13



112.    On information and belief, within the app, users are provided with options to manage schedules for one or more diffusers via the illustrated "Schedule" option. Users can set up to five individual schedules per diffuser.  To set the schedule, a user chooses the desired start and end times for fragrance diffusion and the days of the week the schedule is active.  Users can save pre-selected schedules.  Multiple diffusers with customized schedules and settings can be selected through the app.

113.    The release of fragrance includes rule-based settings with several options of input triggers, including location, room, devices associated with a room, and a set of diffusers associated with a room.

114.    Through the app, the scheduling instructions are executed to perform various operations, including receiving the scheduling data with particular data associated with an Accused Product installed in a particular room, determining the schedule associated with the device within a particular room, monitoring the schedule to

4880-6310-6551.13

determine that the device should be initiated based on the preselected timeframe, and initiating the mechanism of the scent dispensing device to emit the selected fragrance in a particular room according to the scheduling data.  These steps are performed relying on one or more memory storing instructions that cause the system to perform the various operations.

115.    On information and belief, Atmos has been and is inducing infringement of the '886 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the inventions claimed in the '886 Patent. Specifically, Atmos encourages its users to use the Accused Products in an infringing manner including by using the app to control fragrance schedules in the Accused Products in a manner that infringes the claims of the '886 Patent. On information and belief, Atmos does so despite knowing about its infringement of the '886 Patent or otherwise being willfully blind to such infringement.

116.    On information and belief, Atmos has been and is continuing to contributorily infringe the '886 Patent by selling or offering to sell the Accused Products, knowing them to be especially made or especially adapted for practicing the invention of the '886 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

0.117. Atmos has been on notice of infringement of the '091 Patent and the '601 Patent since at least September 6, 2024. Atmos has been on notice of infringement of the '886 Patent since at least August 20, 2025.  Despite being on notice of its

35

infringement, Atmos has continued to infringe through the Accused Products. Atmos specifically advertises the use of the app in controlling the Accused Product and for customer interaction and use of the Accused Products. Without configuration through the app, the Accused Products have no substantial non-infringing use.

**Atmos Refuses to Stop Using Pura's Intellectual Property**

0.118. On September 6, 2024, Pura sent a letter to Atmos. The letter informed Atmos of Pura's concerns that Atmos was infringing Pura's patents and misappropriating its confidential and trade secrets information.

119.    On August 20, 2025, Pura (through counsel) sent a letter to Atmos (via counsel). The letter informed Atmos that – in addition to the prior patents - Atmos was infringing on Pura's latest '886 patent.

0.120. The letter requested that Atmos immediately stop infringing Pura's patents, stop misappropriating Pura's confidential and trade secrets information, and confirm that it would not misuse Pura's intellectual property going forward. Atmos rejected Pura's requests.

0.121. Despite the letter (and notice that Atmos was infringing its patents), Atmos has continued to develop, market, prepare to sell, and sell products that infringe Pura's intellectual property and leverage confidential information obtained from the Investor Individuals and Ms. Knight to improperly compete with Pura.

**Defendants' Misconduct Significantly Harms Pura**

0.122. Defendants' misconduct has caused Pura significant harm.

36

4880-6310-6551.13

0.123. Defendants' infringement of its patents, misappropriation of its confidential and trade secrets information, and breach of contractual obligations has caused Pura to lose sales from would-be customers.

0.124. Defendants' misconduct also threatens Pura's market position and reputation, disrupts its operations, and undermines its significant investment in its proprietary technology and confidential business operations.

0.125. The harm to Pura is ongoing and causing increasingly significant and irreparable harm.

0.126. If Defendants do not immediately cease their ongoing misconduct, Pura will be irreparably harmed, including without limitation by: (1) the loss or harm to existing and prospective consumer relationships; (2) damage to Pura's hard-earned reputation and business goodwill; (3) loss of competitive advantage in the fragrance industry; and (4) dissemination, misappropriation, and use of Pura's confidential and trade secrets information.

**FIRST** Claim for Relief**CLAIM FOR RELIEF**
(Infringement of U.S. Patent No. 10,967,091 – Against Atmos)

0.127. Pura incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

0.128. Atmos has been and is infringing at least claim 1 of the '091 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Products in violation of 35 U.S.C. § 271(a).

37

0.129. Atmos has been and is inducing infringement of the '091 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the invention claimed in the '091 Patent, in violation of 35 U.S.C. § 271(b).

0.130. Atmos has been and is contributing to the infringement of the '091 Patent by selling or offering to sell the Accused Products, knowing them to be especially made or especially adapted for practicing the invention of the '091 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

0.131. Atmos has been and is infringing, contributing to the infringement of, and inducing the infringement of the '091 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Products.

0.132. Atmos's infringement has been, and continues to be knowing, intentional, and willful. For example, despite being put on specific notice of the '091 Patent, Atmos has continued to infringe the '091 Patent. Further, as set forth more fully above, Atmos and its employees have copied Pura's product designs, notwithstanding Pura's intellectual property rights.

0.133. Atmos's infringement of the '091 Patent has caused and will continue to cause Pura damages for which Pura is entitled to compensation pursuant to 35 U.S.C. § 284, including lost profits but in no event less than a reasonable royalty.

38

4880-6310-6551.13

~~0.~~134. Atmos's acts of infringement of the '091 Patent have caused and will continue to cause Pura immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Pura has no adequate remedy at law.

~~0.~~135. This case is exceptional and, therefore, Pura is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

~~0.~~136. Atmos's willful infringement justifies enhancement of any and all damages up to three times pursuant to 35 U.S.C. § 284.

## SECOND ~~Claim for Relief~~CLAIM FOR RELIEF
(Infringement of U.S. Patent No. 11,213,601 – Against Atmos)

~~0.~~137. Pura incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

~~0.~~138. Atmos has been and is infringing at least claim 1 of the '601 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Products in violation of 35 U.S.C. § 271(a).

~~0.~~139. Atmos has been and is inducing infringement of the '601 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the invention claimed in the '601 Patent, in violation of 35 U.S.C. § 271(b).

~~0.~~140. Atmos has been and is contributing to the infringement of the '601 Patent by selling or offering to sell the Accused Products, knowing them to be especially made

or especially adapted for practicing the invention of the '601 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

0.141. Atmos has been and is infringing, contributing to the infringement of, and inducing the infringement of the '601 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Products.

0.142. Atmos's infringement has been, and continues to be knowing, intentional, and willful. For example, despite being put on specific notice of the '601 Patent, Atmos has continued to infringe the '601 Patent. Furthermore, as set forth more fully above, Atmos and its employees have copied Pura's product designs, notwithstanding Pura's intellectual property rights.

0.143. Atmos's infringement of the '601 Patent has caused and will continue to cause Pura damages for which Pura is entitled to compensation pursuant to 35 U.S.C. § 284, including lost profits but in no event less than a reasonable royalty.

0.144. Atmos's acts of infringement of the '601 Patent have caused and will continue to cause Pura immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Pura has no adequate remedy at law.

0.145. This case is exceptional and, therefore, Pura is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

4880-6310-6551.13

0.146. Atmos's willful infringement justifies enhancement of any and all damages up to three times pursuant to 35 U.S.C. § 284.

### THIRD CLAIMCLAIM FOR RELIEF

(Infringement of U.S. Patent No. 12,329,886 – Against Atmos)

147.    Pura incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

1.148. Atmos has been and is infringing at least claim 1 of the '886 Patent by making, using, importing, selling, or offering for RELIEFsale in the United States, or importing into the United States, including within this judicial district, the Accused Products in violation of 35 U.S.C. § 271(a).

149.    Atmos has been and is inducing infringement of the '886 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the Accused Products that embody or use the invention claimed in the '886 Patent, in violation of 35 U.S.C. § 271(b).

150.    Atmos has been and is contributing to the infringement of the '886 Patent by selling or offering to sell the Accused Products, knowing them to be especially made or especially adapted for practicing the invention of the '886 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

151.    Atmos has been and is infringing, contributing to the infringement of, and inducing the infringement of the '886 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within

this judicial district, the Accused Products.

152.    Atmos's infringement has been, and continues to be knowing, intentional, and willful. For example, despite being put on specific notice of the '886 Patent, Atmos has continued to infringe the '886 Patent. Furthermore, as set forth more fully above, Atmos and its employees have copied Pura's product designs, notwithstanding Pura's intellectual property rights.

153.    Atmos's infringement of the '886 Patent has caused and will continue to cause Pura damages for which Pura is entitled to compensation pursuant to 35 U.S.C. § 284, including lost profits but in no event less than a reasonable royalty.

154.    Atmos's acts of infringement of the '886 Patent have caused and will continue to cause Pura immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Pura has no adequate remedy at law.

155.    This case is exceptional and, therefore, Pura is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

156.    Atmos's willful infringement justifies enhancement of any and all damages up to three times pursuant to 35 U.S.C. § 284.

### FOURTH CLAIM FOR RELIEF
(Breach of Contract (Knight Agreement) – Against Kristen Knight)

0. 157. Pura incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

0. 158. The Knight Agreement is a valid and enforceable contract between Pura

and ~~Ms.~~ Knight.

~~0.~~159. Pura performed its obligations under the Knight Agreement by acting in accordance with the terms set forth therein.

~~0.~~160. Under the Knight Agreement, ~~Ms.~~ Knight expressly agreed to protect Pura's confidential information and refrain from using it for "any purpose other than the performance of Services" on Pura's behalf.

~~0.~~161. The Knight Agreement expressly prohibited ~~Ms.~~ Knight from (among other things):

> a. Disclosing any of Pura's confidential information to third parties; and

> b. Using Pura's confidential information for any purpose other than performing services for Pura.

~~0.~~162. The Knight Agreement also obligated ~~Ms.~~ Knight to return all confidential information and proprietary materials to Pura upon termination of the Knight Agreement.

~~0.~~163. On information and belief, ~~Ms.~~ Knight materially breached the Knight Agreement by (among other things):

> a. Disclosing Pura's confidential information to Atmos; and

> b. Using Pura's confidential information to develop products for Atmos that directly compete with Pura's products.

~~0.~~164. As a direct and proximate result of ~~Ms.~~ Knight's breaches of the Knight Agreement, Pura has suffered, and continues to suffer, damages, including without limitation lost market share, lost profits, and harm to its reputation and goodwill, in an amount to be determined at trial.

### ~~FOURTH CLAIM FOR RELIEF~~

### FIFTH CLAIM FOR RELIEF

(Misappropriation of Trade Secrets in Violation
of the DTSA (18 U.S.C. § 1836) – Against All Defendants)

~~0.~~165. Pura incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

~~0.~~166. Pura has several trade secrets within the definition of 18 U.S.C. § 1839(3) that allow Pura to effectively operate its business and offer innovative products and services to consumers.

~~0.~~167. These trade secrets include (among other things):

a.    Confidential financial and customer data stored in Pura's Shopify platform, including purchase trends, demographic data, and revenue analytics, which provide a competitive edge in marketing and sales strategy;

b.    Information from Pura's Ambassador Program Database, including contact information for ambassadors, campaigns, and incentives, reflecting years of strategic relationship-building and targeted marketing investments; and

c.    Information regarding Pura's financial outlook and projections, marketing and growth strategies, customer data, and product developments.

~~0.~~168. Pura has taken reasonable measures to maintain the confidentiality of these plans, processes, designs, methods, lists, and techniques by (among other things):

a.    Storing information on drives that have strict permission settings and allow access only to certain Pura employees;

b.    Requiring two-factor authentication to access Pura's servers and systems;

c.    Providing credentials for back-end access to accounts, like Shopify, only to employees with legitimate business needs for such information;

d.    Notifying employees, independent contractors, and investors when they are working with Pura's confidential and proprietary information;

e.    Requiring employees, independent contractors, and investors with access to the information to sign confidentiality or non-disclosure agreements; and

f.    Restricting access to proprietary training materials to a limited group of individuals with a need to know.

0.169. Pura's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not be readily ascertainable by proper means by, another person who can obtain economic value from the disclosure or use of the information. Among other things, the trade secrets allow for Pura to maintain its competitive advantage in the marketplace and promote the development of innovative products that address the needs and wants of consumers.

0.170. Pura's proprietary and trade secrets information enable the company to develop unique and high-quality fragrances that distinguish its products in the marketplace. Access to this information would provide a competitor with an unfair advantage by allowing them to replicate Pura's product offerings and marketing strategies without the time, cost, and expertise necessary to independently develop such innovations.

171.    The Knight and the Investor Individuals had access to and obtained Pura's confidential and trade secret information through their involvement with

45

172.   Pura's ~~investors. On~~confidential and trade secret information ~~and belief,~~provided a roadmap for competition with Pura.

173.   The positions of Knight, Tyson Andrus and Derose with Atmos are such that they led to and will continue to lead to the ~~Investor Individuals~~use or disclosure of Pura's trade secrets.

~~0.~~174. Knight has thus necessarily used and disclosed ~~this~~Pura's confidential and trade secret information to ~~Atmos when they helped found or finance the company~~aid in the development of Atmos's competing products, business operations, and strategy.

~~CXXII. Ms. Knight acquired Pura's trade secrets while serving as an independent contractor and consultant for Pura. As alleged above, on information and belief, when Ms. Knight ended her independent contractor relationship with Pura, she took Pura's trade secrets with her and, in violation of her contractual and other legal duties to Pura, used and disclosed the trade secrets to Atmos for her own and Atmos's benefit.~~

~~CXXIII.      On information and belief, Atmos acquired Pura's trade secrets from the Investor Individuals and Ms. Knight. Atmos knew, or had reason to know, that the information provided by the Investor Individuals and Ms. Knight constituted Pura's trade secrets and, on information and belief, encouraged or instructed the Investor Individuals and Ms. Knight to disclose such information. On information and belief, Atmos used the information provided by the Investor~~

46

Individuals and Ms. Knight to establish operations, develop or improve its product offerings and business systems, target customers, and build its brand.

CXXIV.    On information and belief, Defendants continue to use Pura's trade secrets to develop Atmos's business and unfairly compete with Pura.

0.175. As a direct and proximate result of Defendants' misappropriation of its trade secrets, Pura has suffered, and continues to suffer, damages in an amount to be determined at trial.

0.176. Pura has also suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law. Pura is therefore entitled to an injunction prohibiting Defendants from disclosing and using Pura's trade secrets.

0.177. Further, Defendants' misappropriation and use of Pura's trade secrets is willful and malicious. Defendants were aware of the value of Pura's trade secrets and the harm it would cause Pura if they were misappropriated. Nevertheless, Defendants used the trade secrets to help develop Atmos's business and unfairly compete with Pura. Thus, Defendants' conduct is willful and malicious, and the Court may award Pura exemplary damages and attorney fees under 18 U.S.C. §§ 1836(b)(3)(C) and 1836(b)(3)(D).

FIFTH claim for relief

## SIXTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets in Violation of the Utah's Uniform Trade Secrets Act (Utah Code §§ 13-24-1 et seq.) – Against All Defendants)

0.178. Pura incorporates by reference the allegations set forth in the preceding

paragraphs as though fully set forth herein.

0.179. Pura has several trade secrets within the definition of 18 U.S. Utah Code § 13-24-2(4) that allow Pura to effectively operate its business and offer innovative products and services to consumers.

0.180. These trade secrets include (among other things):

a.  Confidential financial and customer data stored in Pura's Shopify platform, including purchase trends, demographic data, and revenue analytics, which provide a competitive edge in marketing and sales strategy;

b.  Information from Pura's Ambassador Program Database, including contact information for ambassadors, campaigns, and incentives, reflecting years of strategic relationship-building and targeted marketing investments; and

c.  Information regarding Pura's financial outlook and projections, marketing and growth strategies, customer data, and product developments.

a.   Pura has taken reasonable measures to maintain the confidentiality of these plans, processes, designs, methods, lists, and techniques by (among other things):

b.   Storing information on drives that have strict permission settings and allow access only to certain Pura employees;

c.   Requiring two-factor authentication to access Pura's servers and systems;

48

4880-6310-6551.13

d.    Providing credentials for back-end access to accounts, like Shopify, only to employees with legitimate business needs for such information;

e.    Notifying employees, independent contractors, and investors when they are working with Pura's confidential and proprietary information;

f.    Requiring employees, independent contractors, and investors with access to the information to sign confidentiality or non-disclosure agreements; and

g.    Restricting access to proprietary training materials to a limited group of individuals with a need to know.

0.181. Pura's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not be readily ascertainable by proper means by, another person who can obtain economic value from the disclosure or use of the information. Among other things, the trade secrets allow for Pura to maintain its competitive advantage in the marketplace and promote the development of innovative products that address the needs and wants of consumers.

0.182. Pura's proprietary and trade secrets information enable the company to develop unique and high-quality fragrances that distinguish its products in the marketplace. Access to this information would provide a competitor with an unfair advantage by allowing them to replicate Pura's product offerings and marketing strategies without the time, cost, and expertise necessary to independently develop such innovations.

183.    The Knight and the Investor Individuals had access to and obtained Pura's confidential and trade secret information through their involvement with

49

184.   Pura's ~~investors. On~~confidential and trade secret information ~~and belief,~~provided a roadmap for competition with Pura.

185.   The positions of Knight, Tyson Andrus and Derose with Atmos are such that they led to and will continue to lead to the ~~Investor Individuals~~use or disclosure of Pura's trade secrets.

~~0.~~186. Knight has necessarily used and disclosed ~~this~~Pura's confidential and trade secret information to ~~Atmos when they helped found or finance the company~~aid in the development of Atmos's competing products, business operations, and strategy.

~~CXXXV.    Ms. Knight acquired Pura's trade secrets while serving as an independent contractor and consultant for Pura. As alleged above, on information and belief, when Ms. Knight ended her independent contractor relationship with Pura, she took Pura's trade secrets with her and, in violation of her contractual and other legal duties to Pura, disclosed the trade secrets to Atmos for her own and Atmos's benefit.~~

~~CXXXVI.    On information and belief, Atmos acquired Pura's trade secrets from the Investor Individuals and Ms. Knight. Atmos knew, or had reason to know, that the information provided by the Investor Individuals and Ms. Knight constituted Pura's trade secrets and, on information and belief, encouraged or instructed the Investor Individuals and Ms. Knight to disclose such information. On information and belief, Atmos used the information provided by the Investor~~

---

50

---

Individuals and Ms. Knight to establish operations, develop or improve its product offerings and business systems, target customers, and build its brand.

CXXXVII.    On information and belief, Defendants continue to use Pura's trade secrets to develop Atmos's business and unfairly compete with Pura.

0.187. As a direct and proximate result of Defendants' misappropriation of its trade secrets, Pura has suffered, and continues to suffer, damages in an amount to be determined at trial.

0.188. Pura has also suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law. Pura is therefore entitled to an injunction prohibiting Defendants from disclosing and using Pura's trade secrets.

0.189. Further, Defendants' misappropriation and use of Pura's trade secrets is willful and malicious. Defendants were aware of the value of Pura's trade secrets and the harm it would cause Pura if they were misappropriated. Nevertheless, Defendants used the trade secrets to help develop Atmos's business and unfairly compete with Pura. Thus, Defendants' conduct is willful and malicious, and the Court may award Pura exemplary damages and attorney fees under Utah Code §§ 13-24-4 and 13-24-5.

## JURY DEMAND

Pura demands a jury trial on all issues triable by right of jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Pura prays for judgment against Defendants as follows:

A.    ON THE FIRST AND, SECOND CLAIM AND THIRD CLAIMS FOR RELIEF

51

4880-6310-6551.13

0.1.    Adjudging that Atmos has infringed, actively induced infringement of, and contributorily infringed the '091 Patent and, the '601 Patent, and the '886 Patent, all in violation of 35 U.S.C. § 271(a), (b), and (c);

0.2.    Granting an injunction permanently enjoining Atmos, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '091 Patent and/or the '601 Patent; and/or the '886 Patent;

0.3.    Ordering Atmos to account and pay damages adequate to compensate Pura for Atmos's infringement of the '091 Patent, the '601 Patent, and '601the '886 Patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

0.4.    Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

0.5.    Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

0.6.    Declaring this case exceptional and awarding Pura its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

0.7.    Awarding such other and further relief as this Court deems just and proper.

.B.    ON THE THIRDFOURTH CLAIM FOR RELIEF:

0.1.    For general compensatory damages in an amount to be determined at trial.

C.A.    ON THE Fourth and FIFTH CLAIM AND SIXTH CLAIMS FOR RELIEF:

0.1.    For general compensatory, statutory, and exemplary damages in an amount to be determined at trial;

0.2.    For an injunction prohibiting Defendants from further misappropriating Pura's trade secrets; and

0.3.    For an award of attorney fees and costs.

D.B.    ON ALL CAUSES OF ACTION:

0.1.    For an award of attorneys' fees and costs allowed by applicable law;

0.2.    For pre- and post-judgment interest as allowed by applicable law;

0.3.    For such other and further relief as this Court may deem appropriate and equitable under the circumstances.

DATED this ____ day of _____ 2026.

MAGLEBY CATAXINOS, PC

_____
Edgar R. Cataxinos
James E. Magleby
Jennifer Fraser Parrish

Attorneys for Plaintiff Pura Scents, Inc.

4880-6310-6551.13