Chad Pehrson (12622) cpehrson@knh.law
**KNH LLP**
50 W Broadway, Ste 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURA SCENTS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>v.<br><br>ATMOS FRAGRANCE, INC., a Delaware corporation, KRISTEN KNIGHT, an individual,<br><br>        Defendants. | **OPPOSITION TO PLAINTIFF'S MOTION SEEKING LEAVE TO AMEND COMPLAINT, ON GROUNDS OF FUTILITY**<br><br>Case No.: 2:24-cv-00958-TS-DAO<br><br>Judge: Ted Stewart<br>Magistrate Judge: Daphne A. Oberg |

In their Motion, Pura seeks leave to amend its Complaint to (1) add a new Third Claim for Relief alleging infringement of U.S. Patent No. 12,329,886 (the "'886 Patent"), (2) make various changes to the factual allegations and claims asserted against Knight, and (3) make other miscellaneous changes. But the proposed Amended Complaint suffers from the same deficiencies that Defendants have already identified in their pending Motion to Dismiss [Dkt. 13] (the "MTD"). The new patent infringement claim parrots the language of the '886 Patent without any factual content showing how the Accused Products actually practice each element of the asserted claims. And the claims against an individual former independent contractor, Ms. Knight—which are a focus of the pending MTD—remain virtually unchanged, with only cosmetic edits that do nothing

1

to cure the fundamental pleading deficiencies. Amendment for the sake of amendment is not a proper basis for leave, and the Court should not permit Pura to amend its Complaint to assert claims that would be subject to immediate dismissal.[1]

## BACKGROUND

On December 20, 2024, Pura filed its Complaint against Defendants alleging Atmos infringed two patents owned by Pura (the '091 Patent and the '601 Patent), that Knight breached an Independent Contractor Agreement between herself and Pura (the "Knight IC Agreement"), and that Defendants misappropriated trade secrets in violation of 18 U.S.C. § 1836 ("DTSA") and under Utah Code §§ 13-24-1 *et seq.* ("UTSA"). [Dkt. 1.]

On February 18, 2025, Defendants filed a Motion to Dismiss [Dkt. 13] (the "MTD"), challenging, among other things, the sufficiency of Pura's patent infringement allegations and the breach of contract and trade secret misappropriation claims against Knight. Pura filed its Opposition on March 25, 2025 [Dkt. 16], and Defendants filed their Reply on April 8, 2025 [Dkt. 17]. The MTD has been fully briefed since that time and remains pending.

On January 30, 2026—more than ten months after the MTD was fully briefed—Pura filed the present Motion for Leave to File Amended Complaint [Dkt. 25]. The proposed Amended

---

[1] Although Defendants' basis for opposing leave is futility, the Motion also reflects undue delay. The '886 Patent issued on June 17, 2025—more than seven months before Pura filed this Motion on January 30, 2026—and Pura sent a notice letter to Atmos regarding the '886 Patent on August 20, 2025, yet waited an additional five months to act. *See* Proposed Am. Compl. ¶ 119. The Knight-specific amendments are even less explicable: the MTD has been fully briefed since April 8, 2025, and if Pura believed its allegations were insufficient, it could have sought leave long ago rather than allowing the parties to brief the MTD extensively only to attempt an end-run with cosmetic changes. *See Minter v. Prime Equip. Grp., Inc.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (undue delay can justify denial of leave to amend, particularly absent adequate explanation). The timing suggests Pura is using the amendment process to moot the MTD rather than defending it on the merits.

Complaint seeks to (1) add a new Third Claim for Relief alleging infringement of U.S. Patent No. 12,329,886 (the "'886 Patent"), which issued on June 17, 2025; (2) make various changes to the factual allegations and claims asserted against Knight; and (3) make other miscellaneous modifications.

As relevant here, the proposed Amended Complaint's key allegations include the following: With respect to patent infringement, the proposed Amended Complaint retains the existing claims for the '091 and '601 Patents and adds a Third Claim for the '886 Patent:

> 148.     Atmos has been and is infringing at least claim 1 of the '886 Patent by making, using, importing, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Accused Products in violation of 35 U.S.C. § 271(a).

[Proposed Am. Compl., Dkt. No. 25-1, ¶ 148.]

With respect to the breach of contract claim against Knight, the proposed Amended Complaint's operative allegation of breach remains materially unchanged from the original Complaint:

> 163.     On information and belief, Knight materially breached the Knight IC Agreement by (among other things):
>     a. Disclosing Pura's confidential information to Atmos; and
>     b. Using Pura's confidential information to develop products for Atmos that directly compete with Pura's products.

[Proposed Am. Compl. ¶ 163; *compare* Compl. ¶ 117.]

With respect to the trade secret misappropriation claims, the proposed Amended Complaint retains the original allegations and adds new paragraphs asserting:

> 43. Knight's position with Atmos is such that it led to and will continue to lead to the use or disclosure of Pura's trade secrets.
> 44. Knight has thus necessarily used and disclosed Pura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy.

3

[Proposed Am. Compl. ¶¶ 43–44.]

The redline comparison of the proposed Amended Complaint confirms that the changes to the Knight-specific claims are largely cosmetic—consisting principally of removing the "Ms." prefix before Knight's name and occasionally substituting "has thus necessarily" for the original Complaint's "on information and belief" language—while no new factual allegations are added to the breach of contract claim and only conclusory assertions are added to the trade secret claims. [See Dkt. 25-2.]

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] district court may deny leave to amend on grounds of futility if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim upon which relief can be granted." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs.*, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Leave to amend may also be denied based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A proposed amendment is futile if the amended complaint "would be subject to dismissal."[2] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell*

---

[2] Because this opposition brief directly argues futility (i.e., the proposed amended complaint would be subject to dismissal under Rule 12(b)(6)), Defendants believe that it falls under the 25-page cap associated with Rule 12(b) motions—not the default page limits for other oppositions.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

**I. Proposed Claims Against Knight Are Futile, and the Trade Secret Claims Against All Defendants Suffer from the Same Deficiencies.**

    **A. The Fourth Claim for Relief (Breach of Contract) Fails to Cure the Deficiencies Identified in Defendants' Motion to Dismiss.**

The proposed Fourth Claim for Relief against Knight for breach of the Independent Contractor Agreement (the "Knight IC Agreement") is nearly identical to the claim already under challenge in Defendants' pending MTD. A comparison of the original and proposed amended allegations reveals that Pura has made no substantive changes to its breach of contract theory. The only differences are cosmetic: Pura strikes the prefix "Ms." before Knight's name in various places and changes a handful of inconsequential words. These are not the kinds of amendments that cure pleading deficiencies.

Under Utah law, a breach of contract claim requires "(1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Green Oak Hedge Fund v. Hopkinson*, No. 2:06-cv-636, 2007 WL 2029314 (D. Utah Jul. 9, 2007). Here, Pura adequately pleads a valid contract and its own performance. But when it comes to breach—the dispositive element—Pura offers nothing more than the same conclusory "on information and

belief" allegation from the original Complaint. The proposed Amended Complaint's critical allegation of breach—Paragraph 163—continues to state only that "[o]n information and belief, Knight materially breached the Knight IC Agreement by (among other things): (a) Disclosing Pura's confidential information to Atmos; and (b) Using Pura's confidential information to develop products for Atmos that directly compete with Pura's products." [Proposed Am. Compl. ¶ 163.] This allegation is identical in all material respects to the original Complaint. A complaint does not plausibly state a claim when it "only contains conclusory statements that are turned into factual allegations when preceded by 'on information and belief' statements." *Balfour Beatty Infrastructure Inc. v. Am. Track Generations LLC*, No. 19-249, 2020 WL 13049359, at *4 (D. Wyo. June 22, 2020). The allegation remains a textbook "threadbare recital" of the elements of a breach of contract claim "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Moreover, the "information and belief" relaxed pleading standard is intended for facts peculiarly within the defendant's possession. It does not apply here. Pura is the master of its own proprietary information. If Knight actually took trade secrets or disclosed confidential data, Pura—as the owner of that data—should be able to identify what is missing or what specific data was accessed prior to her departure. Pura's failure to identify what was taken suggests they do not know, rendering the allegation purely speculative.

The deficiency that Defendants identified in the MTD persists: Pura has not alleged *what* specific confidential information Knight supposedly disclosed to Atmos, *when* she disclosed it, *how* she disclosed it, or *to whom* at Atmos she disclosed it. The proposed Amended Complaint identifies broad categories of information that Knight had access to—"business strategies, product development plans, marketing initiatives, and customer and ambassador information," Proposed

Am. Compl. ¶ 29—but never connects any specific piece of that information to any specific act of disclosure or misuse. Pura's theory amounts to nothing more than the impermissible inference that because Knight had access to confidential information and later co-founded a competing company, she must have breached the Knight IC Agreement. This is precisely the kind of speculative pleading that *Twombly* and *Iqbal* forbid.

The redline comparison reinforces that the proposed amendments are cosmetic rather than substantive. Pura has not added a single new factual allegation to the Fourth Claim for Relief. It has not identified any particular document, communication, or meeting in which Knight allegedly disclosed Pura's confidential information to Atmos. It has not described any specific Atmos product or feature that incorporates a specific piece of Pura's confidential information. And it has not alleged any facts from which the Court could reasonably infer that a breach actually occurred—as opposed to merely being possible. Because the proposed amendment would not survive a motion to dismiss, it is futile.

**B. The Trade Secret Claims Against Knight and Atmos Fail to Include Necessary Factual Allegations.**

The proposed Amended Complaint continues to rest on a theory of "inevitable disclosure," but fail to allege sufficient facts to support such a theory.  The operative factual allegations about Knight's supposed misuse of confidential information follow a simple—and legally insufficient—syllogism: (1) Knight, an independent contractor for Pura, had access to Pura's (unknown) confidential information; (2) Knight co-founded Atmos; (3) therefore, Knight must have used and disclosed Pura's confidential information.

Paragraph 44 of the proposed Amended Complaint is the lynchpin of this theory, alleging that "Knight has *thus necessarily* used and disclosed Pura's confidential and trade secret

information to aid in the development of Atmos's competing products, business operations, and strategy." Proposed Am. Compl. ¶ 44 (emphasis added). The word "necessarily" does all the work in this allegation—it asks the Court to infer misuse not from any factual evidence of disclosure but from the bare fact that Knight had access to information and later joined a competitor. The redline comparison confirms that this language is unchanged from the original Complaint. Similarly, Paragraph 43 alleges that Knight's "position with Atmos is such that it led to and will continue to lead to the use or disclosure of Pura's trade secrets." Proposed Am. Compl. ¶ 43. This is the very essence of the inevitable disclosure doctrine—the notion that a person's position alone, without evidence of actual disclosure, establishes misappropriation. This deficiency is not limited to the claims against Knight. The inevitable disclosure theory is also the bridge by which Pura attempts to establish misappropriation by Atmos. Pura's theory of Atmos's liability depends on the premise that Knight and the Investor Individuals disclosed trade secrets to Atmos. *See* Proposed Am. Compl. ¶¶ 170–173. But the proposed Amended Complaint does not allege any *independent* facts establishing that Atmos actually received specific trade secrets—it derives Atmos's knowledge and receipt entirely from the conclusory allegations that Knight and the Investor Individuals "disclosed" the information. If the underlying allegations of disclosure by Knight and the Investor Individuals are insufficient—and they are—then the derivative claim that Atmos "acquired" those trade secrets is equally deficient. This doctrine—which allows a finding of misappropriation based solely on the inference that a former employee will inevitably use trade secrets in a new position— has been rejected or viewed skeptically in many jurisdictions because it effectively converts a confidentiality agreement into a non-compete agreement. *See, e.g.*, *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999).

Importantly, even if this Court accepted the theory of inevitable disclosure, Pura's allegations would still fall short. Courts that have adopted the doctrine require far more than what Pura has pleaded here. Under the leading formulation in *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995), a plaintiff must demonstrate that the former employee's new position is so similar to the old one that the employee cannot reasonably be expected to fulfill new job duties without drawing on the former employer's trade secrets, and that there is evidence of bad faith or dishonesty that makes disclosure not merely possible but likely. Pura's allegations satisfy neither requirement.

First, the proposed Amended Complaint does not allege any meaningful overlap between Knight's role at Pura and her role at Atmos. At Pura, Knight managed the Ambassador Program—a marketing and influencer initiative. Proposed Am. Compl. ¶ 29. The proposed Amended Complaint does not allege what Knight's role at Atmos entails, much less that her responsibilities at Atmos are so similar to her work at Pura that she could not perform them without relying on Pura's confidential information. Pura alleges only that Knight is a "co-founder" of Atmos, Proposed Am. Compl. ¶ 26, which says nothing about her day-to-day responsibilities or whether those responsibilities require use of the specific categories of information she accessed at Pura. The fact that both companies operate in the smart fragrance space does not, standing alone, create a plausible inference that Knight's work at Atmos requires her to draw on the particular confidential information she accessed in managing Pura's Ambassador Program.

The same deficiency applies to the allegations regarding the "Investor Individuals." The proposed Amended Complaint alleges that "The Investor Individuals ha[d] access to Pura's confidential and trade secret information through their involvement with Pura's investors" and that

they "disclosed this confidential and trade secret information with Atmos when they helped found or finance the company." Proposed Am. Compl. ¶ 170. But this allegation follows the identical impermissible syllogism: access plus involvement with a competitor equals disclosure. Pura does not identify what specific information the Investor Individuals had access to, what specific information they allegedly disclosed, when or how any such disclosure occurred, or what Atmos did with any particular piece of information. These allegations are no more factual than the Knight allegations—they are conclusions dressed in the clothing of facts.

Second, Pura alleges no facts suggesting bad faith, dishonesty, or surreptitious conduct by Knight. There are no allegations that Knight copied files before leaving Pura, retained documents she was obligated to return, attempted to recruit Pura employees or ambassadors, or engaged in any other conduct suggesting actual or threatened misappropriation. The proposed Amended Complaint alleges that Knight was obligated to return confidential information upon termination of the Knight IC Agreement, Proposed Am. Compl. ¶ 162, but does not allege that she failed to do so. Absent any facts suggesting that Knight actually took, retained, or used specific confidential information, Pura's claim rests entirely on speculation—which is insufficient under any legal standard.

The Court should not permit Pura to assert claims premised on "information and belief" suspicions, and which are not sufficiently factual to support Pura's theory of liability.

**C. The Fifth and Sixth Claims for Relief (Trade Secret Misappropriation) Remain Deficient as to All Defendants.**

Pura's proposed Fifth Claim (DTSA) and Sixth Claim (UTSA) against all Defendants suffer from the same fundamental pleading deficiencies outlined above—and the proposed amendments do not cure them for any Defendant.

To state a claim for trade secret misappropriation under the DTSA, a plaintiff must adequately allege "(1) the existence of a trade secret, (2) misappropriation of the trade secret, and (3) use of the trade secret in interstate commerce." 18 U.S.C. § 1836(b)(1). Utah's UTSA similarly requires a plaintiff to identify the trade secret at issue and plead facts showing that the defendant acquired, disclosed, or used the trade secret by improper means or in breach of a duty. Utah Code § 13-24-2. Under either statute, the plaintiff must do more than allege in conclusory terms that the defendant "took" or "used" trade secrets—it must plead facts making misappropriation plausible. See *Iqbal*, 556 U.S. at 678.

As to Knight, the proposed Amended Complaint fails to connect any specific trade secret to any specific act of misappropriation by Knight. Pura identifies broad categories of trade secrets in Paragraphs 167–168, including "confidential financial and customer data stored in Pura's Shopify platform," "information regarding Pura's marketing strategies," and the Ambassador Program database. Proposed Am. Compl. ¶¶ 167–168. But the proposed Amended Complaint never alleges which of these specific trade secrets Knight actually misappropriated. Knight managed the Ambassador Program—she did not, based on Pura's own allegations, have any role in product engineering, patent development, or fragrance formulation. Yet Pura lumps Knight together with all other Defendants in sweeping allegations that treat access as synonymous with misappropriation.

The proposed Amended Complaint does add some new paragraphs to the trade secret claims as they relate to Knight, such as alleging that "Knight has thus necessarily used and disclosed Pura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy" (Proposed Am. Compl. ¶ 44) and that her "position with Atmos is such that it led to and will continue to lead to the use or disclosure of Pura's trade secrets" (id. ¶ 43). But these additions are textbook conclusory allegations dressed up as factual ones. The words "necessarily" and "led to" do all the heavy lifting, and Pura provides no factual content to support them. Pura does not allege how Knight used or disclosed the trade secrets—did she copy files? Download documents? Retain physical materials she was obligated to return? Forward emails? Pura does not allege what specific trade secrets she used or disclosed, or when she did so, or how those trade secrets were actually incorporated into any specific Atmos product, feature, or business decision. Without these foundational facts, the allegation that Knight misappropriated Pura's trade secrets is no different from alleging that she "breached" the Knight IC Agreement—it is a legal conclusion masquerading as a factual allegation. See Iqbal, 556 U.S. at 678.

As to Atmos, the trade secret claims against Atmos are derivative of the claims against Knight and the Investor Individuals—and they are equally deficient. Pura does not allege that Atmos independently acquired any trade secret through improper means. Atmos's alleged liability rests entirely on the premise that Knight and the Investor Individuals disclosed trade secrets to Atmos. But as demonstrated above, Pura has not plausibly alleged that Knight or the Investor Individuals actually disclosed any specific trade secret. The claim against Atmos therefore collapses along with the claims against the individuals from whom Atmos purportedly received

the information. Even setting aside the derivative nature of the claim, Pura's allegations against Atmos are independently deficient. For example, Pura alleges on information and belief that "the Investor Individuals and Knight disclosed, to Atmos, Pura's confidential or trade secrets information, including information regarding Pura's fragrances, product development, marketing and sales strategies, and customer and ambassador information" (Proposed Am. Compl. ¶ 66). But Pura does not allege what specific trade secrets Atmos received from Knight or the Investor Individuals, when those trade secrets were communicated, or how Atmos incorporated any specific trade secret into any specific product, business system, or customer-targeting strategy. Instead, Pura offers sweeping, generic allegations rooted in inevitable disclosure, such as that the positions of Knight and certain Investor Individuals "led to and will continue to lead to the use or disclosure of Pura's trade secrets" (*id.* ¶ 173), and that Knight "has thus necessarily used and disclosed Pura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy" (*id.* ¶ 174)—a description so broad it encompasses virtually any business activity. This is not a factual allegation; it is a legal conclusion that every aspect of Atmos's business must be tainted because individuals with prior access to Pura's information were involved in founding the company.

These allegations fail for the same reasons the Knight allegations fail—and for an additional reason: they are entirely derivative. Pura does not allege that Atmos independently acquired any trade secret through improper means. Atmos's alleged liability rests entirely on the premise that Knight and the Investor Individuals disclosed trade secrets *to* Atmos. But as demonstrated above, Pura has not plausibly alleged that Knight or the Investor Individuals actually disclosed any specific trade secret. The claim against Atmos therefore collapses along with the

claims against the individuals from whom Atmos purportedly received the information. Even setting aside the derivative nature of the claim, Pura's allegations against Atmos are independently deficient. Pura does not allege what specific trade secrets Atmos received from Knight or the Investor Individuals. It does not allege when those trade secrets were communicated. It does not allege how Atmos incorporated any specific trade secret into any specific product, business system, or customer-targeting strategy. Instead, Pura offers sweeping, generic allegations rooted in inevitable disclosure, such as that—on information and belief—the Investor Individuals and Knight "disclosed, to Atmos, Pura's confidential or trade secrets information, including information regarding Pura's fragrances, product development, marketing and sales strategies, and customer and ambassador information" (Proposed Am. Compl. ¶ 66); that the positions of Knight and certain Investor Individuals "led to and will continue to lead to the use or disclosure of Pura's trade secrets" (id. ¶ 173); and that Knight "has thus necessarily used and disclosed Pura's confidential and trade secret information to aid in the development of Atmos's competing products, business operations, and strategy" (id. ¶ 174). These are descriptions so broad they encompass virtually any business activity. This is not a factual allegation; it is a legal conclusion that every aspect of Atmos's business must be tainted because individuals with prior access to Pura's information were involved in founding the company.

Critically, the trade secret claims against all Defendants also continue to rely on the allegation that Knight "has thus necessarily used and disclosed Pura's confidential and trade secret information." Proposed Am. Compl. ¶ 174. As discussed above, this allegation is rooted in the inevitable disclosure doctrine. Even the proposed new allegations are qualified with "on information and belief"—a qualifier that does not excuse a plaintiff from pleading sufficient facts

to state a plausible claim. See *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (pleadings must give fair notice of the claim and the grounds upon which it rests); *Balfour Beatty*, 2020 WL 13049359, at *4 (conclusory statements preceded by "on information and belief" are insufficient).

In sum, the proposed amendments to the trade secret claims do not cure the deficiencies identified in the MTD as to any Defendant. Pura has added words, but not facts. It continues to rely on the theory that because Knight and the Investor Individuals had access to some categories of confidential information and later founded or financed a competitor, misappropriation must have occurred—and that Atmos must be liable because it was the recipient. That is not a plausible allegation as to any party—it is speculation, and the amendment is futile.

## II. The New Third Claim for Relief (Infringement of the '886 Patent) Is Futile.

### A. The Third Claim Merely Parrots the '886 Patent's Claim Language Without Factual Content.

Pura's proposed Third Claim for Relief alleges infringement of U.S. Patent No. 12,329,886 (the "'886 Patent"), which issued on June 17, 2025. The '886 Patent is generally directed to a system for controlling fragrance dispensing devices, and its Claim 1 requires, among other things: (a) "one or more processors" and "one or more memory storing instructions"; (b) "receiving scheduling data associated with [a] scent dispensing device installed in a particular room"; (c) "determining a schedule associated with the device installed in [the] particular room based on the timeframe"; (d) "monitoring the schedule to determine that the schedule [should] be initiated based on the timeframe"; and (e) "initiating a dispensing mechanism of the device to emit a scent in the particular room based on the scheduling data."

15

The proposed Amended Complaint's allegations of infringement for the '886 Patent follow the same deficient template as the existing First and Second Claims for the '091 and '601 Patents. Rather than alleging specific facts showing *how* the Accused Products practice each element of Claim 1, Pura simply restates the patent's claim language and asserts that the Accused Products satisfy it. For instance, Pura alleges that "[t]hrough the app, the scheduling instructions are executed to perform various operations, including receiving the scheduling data with particular data associated with an Accused Product installed in a particular room, determining the schedule associated with the device within a particular room, monitoring the schedule to determine that the device should be initiated based on the preselected timeframe, and initiating the mechanism of the scent dispensing device to emit the selected fragrance in a particular room according to the scheduling data."  Proposed Am. Compl. ¶ 114.

This is quintessential claim-parroting. The paragraph tracks the language of Claim 1 of the '886 Patent nearly verbatim, substituting generic references to "the Accused Products" and "the app" without identifying any specific factual content. An element-by-element comparison confirms the deficiency:

*Processors and Memory.* Claim 1 requires "one or more processors" and "one or more memory storing instructions." Pura does not identify what processor or processors exist in the Accused Products, what type of memory they contain, or what instructions are stored in that memory. Every modern consumer electronic device contains processors and memory—merely alleging their existence without factual specificity does not make infringement plausible for any particular patent claim.

*Receiving Scheduling Data.* Claim 1 requires "receiving scheduling data associated with [a] scent dispensing device installed in a particular room." Pura alleges only that the app involves "receiving the scheduling data with particular data associated with an Accused Product installed in a particular room." Proposed Am. Compl. ¶ 114. This mirrors the claim language word-for-word. Pura does not allege *what* scheduling data the Accused Products receive, *from where* or *from whom* that data is received, *what format* the data takes, or *how* the system associates particular data with a particular room. The allegation provides no factual content whatsoever—it is the patent claim restated as an accusation.

*Monitoring the Schedule.* Claim 1 requires "monitoring the schedule to determine that the schedule [should] be initiated based on the timeframe." Pura repeats this language almost verbatim but does not explain what "monitoring" means in the context of the Accused Products. Does the Atmos system use a background process running on the device? A cloud-based server checking the time? A push notification system? Pura does not say. Without some factual allegation about what the accused monitoring function actually is, the allegation is nothing more than a legal conclusion.

*Initiating a Dispensing Mechanism.* Claim 1 requires "initiating a dispensing mechanism of the device to emit a scent in the particular room based on the scheduling data." Again, Pura parrots this language without explaining how the Accused Products actually dispense fragrance. Again, Pura parrots this language without explaining how the Accused Products actually dispense fragrance. While related aspects of Pura's technology involve temperature regulation of heating elements (see Proposed Am. Compl. ¶ 80 referencing the patent family), Pura does not allege whether the Accused Products use a heating element, a fan-based system, an ultrasonic diffusion

17

mechanism, or any other specific technology to initiate dispensing. The Court is left to guess how the Accused Products allegedly satisfy this element.

But Pura does not allege whether the Accused Products use a heating element, a fan-based system, an ultrasonic diffusion mechanism, or any other specific technology. The Court is left to guess how the Accused Products allegedly satisfy this element.

Pura's only attempt at factual specificity regarding the Accused Products' scheduling features appears in Paragraph 112, which alleges that users can "set up to five individual schedules per diffuser" and choose "start and end times for fragrance diffusion and the days of the week the schedule is active." Proposed Am. Compl. ¶ 112. But describing the user-facing features of the Accused Products is not the same as alleging facts showing that the underlying system practices each element of the patent claim. A user interface for setting schedules does not, without more, establish that the accused system contains the specific processors, memory, monitoring functions, and dispensing mechanisms required by Claim 1.

The Tenth Circuit and courts in this District require more than the conclusory recitation of patent claim language to state a claim for infringement. See *Bos. Sci. Corp. v. Johnson & Johnson, 647 F.3d 1353, 1363 (Fed. Cir. 2011)* (the complaint must "place the alleged infringer on notice of what activity…is being accused of infringement"). The proposed Third Claim fails to do so.

**B. The Induced and Contributory Infringement Allegations Are Equally Deficient.**

The proposed Amended Complaint also asserts that Atmos has induced infringement and contributorily infringed the '886 Patent. Proposed Am. Compl. ¶¶ 149–151. But these claims compound the deficiencies of the direct infringement allegations rather than remedy them.

To state a claim for induced infringement under 35 U.S.C. § 271(b), a plaintiff must allege facts showing that the defendant "knowingly induced infringement and possessed specific intent to encourage another's infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). Pura alleges only that "Atmos encourages its users to use the Accused Products in an infringing manner including by using the app to control fragrance schedules." Proposed Am. Compl. ¶ 149. But this allegation is circular—it assumes the very infringement that must be established. Pura does not identify *what specific instructions* Atmos provides to users, *how* those instructions lead users to practice each element of Claim 1, or *what specific knowledge* Atmos possesses of the '886 Patent beyond the August 2025 notice letter. The allegation that Atmos acts "despite knowing about its infringement" is a bare legal conclusion unsupported by any factual content.

Similarly, the contributory infringement claim alleges that Atmos sells the Accused Products "knowing them to be especially made or especially adapted for practicing the invention of the '886 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use." Proposed Am. Compl. ¶ 150. But Pura pleads no facts establishing that the Accused Products have no substantial non-infringing use. A fragrance diffuser plainly has non-infringing uses—it can be manually operated, used without a schedule, or controlled without the specific system architecture claimed in the '886 Patent. Pura's conclusory assertion otherwise does not suffice. Finally, liability for induced or contributory infringement is predicated on a finding of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920 (2014). Because Pura has failed to plausibly plead direct infringement of the '886 Patent, the dependent claims for indirect infringement necessarily fail as a matter of law.

**C. The Third Claim Follows the Same Deficient Template as the Existing Patent Claims Already Under Challenge.**

The proposed Third Claim for the '886 Patent is a near carbon-copy of the existing First Claim ('091 Patent) and Second Claim ('601 Patent) that are already the subject of Defendants' MTD. The only material difference is the substitution of the '886 Patent number and the insertion of Paragraph 79 describing the '886 Patent's subject matter. But Paragraph 79 itself merely paraphrases the patent's abstract rather than providing factual content about the Accused Products. Indeed, Paragraph 79 describes *Pura's own patented technology*—not anything about how the Accused Products work.

The deficiency is the same across all three patent claims: Pura identifies the Accused Products in the broadest possible terms ("diffusers, under the brand name Atmos Diffuser, fragrance vials used in conjunction with such diffusers, the Atmos smartphone app, and other technology employed by Atmos"), then concludes that these products infringe without bridging the gap between the patent claims and the accused technology. This is precisely the type of formulaic pleading that federal courts have repeatedly rejected in patent cases. See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("merely reciting the claim elements and [stating the defendant] infringes [is] not sufficient").

Notably, Pura had over seven months between the issuance of the '886 Patent on June 17, 2025 and the filing of this Motion on January 30, 2026 to investigate the Accused Products and develop factual allegations. Pura surely could have evaluated an Atmos diffuser, downloaded the Atmos app, and alleged specific facts about how the system operates. Its failure to do so—despite ample time and opportunity—underscores that the proposed Third Claim is not supported by the

factual investigation that *Twombly* and *Iqbal* demand. Because the proposed Third Claim suffers from the same deficiencies as the existing claims already challenged in the MTD, allowing the amendment would be futile.

## III. Pura's Proposed Amendments to the Existing Patent Claims Do Not Cure the Pending MTD's Challenges.

Pura's proposed Amended Complaint also adds several paragraphs to the factual allegations supporting the existing First Claim ('091 Patent) and Second Claim ('601 Patent). These additions include allegations about the Atmos app's scheduling features, such as the ability for users to "set up to five individual schedules per diffuser" and to choose "start and end times for fragrance diffusion and the days of the week the schedule is active," Proposed Am. Compl. ¶ 112; photographs and descriptions of the device's physical components, including "three holders for fragrance vials with flanges that retain each vial," *id.* ¶ 84; screenshots of app interfaces showing remote control and intensity-level settings, *id.* ¶¶ 102, 104; and allegations that "the heating elements include sensors that detect temperature and provide feedback to the heating element control," *id.* ¶ 103.

While these additions provide marginally more detail about the Accused Products' *features*, they do not remedy the fundamental deficiency identified in Defendants' MTD: Pura still does not map the accused functionality to the *specific elements* of the asserted patent claims. Describing what a product does in general terms is not the same as alleging facts showing that each element of a patent claim is practiced by the accused product. See *In re Bill of Lading*, 681 F.3d at 1339.

The '091 Patent, for instance, claims an apparatus that wirelessly connects to a "management server" to receive "control settings," and includes a "controller" that dispenses

fragrance "based in part on such settings." Pura's new allegations show that the Accused Products have an app and Wi-Fi connectivity—features common to virtually every modern smart home device. But Pura does not allege what constitutes the "management server" in the Accused Products' architecture, what specific "control settings" are received, or how the accused "controller" processes those settings to dispense fragrance. The new screenshots and photographs show what the product *looks like* and what the user interface *displays*, but they do not bridge the gap between the patent's claimed architecture and the Accused Products' actual internal operation.

The same deficiency persists for the '601 Patent, which claims a fragrance intensity control mechanism using PID (proportional-integral-derivative) control of heating elements at specific temperatures. Pura adds an allegation that the Accused Products' app allows users to "control the intensity of a fragrance, which on information and belief, is controlled by different temperatures from the heating element." Proposed Am. Compl. ¶ 104. But this allegation—still hedged with "on information and belief"—merely asserts that heating elements exist and that intensity varies, without alleging any facts about whether the Accused Products use PID control specifically, how temperature is regulated, or what feedback mechanism exists between the temperature sensors and the controller. The '601 Patent's distinguishing feature is its *specific control mechanism*—PID control—and Pura has not alleged sufficient facts suggesting the Accused Products employ that mechanism.

Moreover, the proposed amendments reveal a telling pattern: the new factual allegations added in Paragraphs 82–114 are largely shared across all three patent claims. Pura incorporates these paragraphs by reference into each Claim for Relief without differentiating which factual allegations are relevant to which patent's specific claim elements. This generic, one-size-fits-all

approach is the hallmark of formulaic pleading. Each patent claims a different invention—the '091 Patent claims a wirelessly-controlled dispensing apparatus, the '601 Patent claims a PID-based intensity control mechanism, and the '886 Patent claims a scheduling system. Pura's failure to tailor its factual allegations to the specific elements of each patent underscores that the proposed amendments are cosmetic additions, not substantive corrections. The proposed amendments thus do not alter the analysis presented in Defendants' MTD, which remains applicable in full.

## CONCLUSION

Pura's proposed Amended Complaint suffers from the same fundamental deficiencies as the original: the Knight claims remain conclusory and factually barren, relying on unsupported "on information and belief" allegations; the new '886 Patent claim parrots claim language without any factual showing of how the Accused Products infringe; and the additions to the existing patent claims—screenshots and feature descriptions—add color but fail to map accused functionality to specific claim elements. Because the proposed amendments would not survive a motion to dismiss, leave should be denied. Granting it would only force Defendants to re-brief the same arguments already raised in their pending MTD, at unnecessary additional cost, delay, and disruption. Defendants respectfully request that the Court deny Pura's Motion for Leave to File Amended Complaint.

Dated: February 13, 2026

Respectfully submitted,

**KNH LLP**

*/s/ Chad S. Pehrson*
Chad S. Pehrson

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2026, I filed a true and correct copy of the

foregoing **OPPOSITION TO PLAINTIFF'S MOTION SEEKING LEAVE TO AMEND**

**COMPLAINT, ON GROUNDS OF FUTILITY** via the Court's CM/ECF system,

which also effectuated service on all counsel of record.


*/s/Chad S. Pehrson*