Edgar Cataxinos (7162)
  cataxinos@mcpc.law
James E. Magleby (7247)
  magleby@mcpc.law
Jennifer Fraser Parrish (11207)
  parrish@mcpc.law
**MAGLEBY CATAXINOS, PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff Pura Scents, Inc.

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PURA SCENTS, INC., a Delaware corporation,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**ATMOS FRAGRANCE, INC., a Delaware corporation, KRISTEN KNIGHT, an individual,**<br><br>        **Defendants.** | **DECLARATION OF JAMES E. MAGLEBY IN SUPPORT OF PLAINTIFF'S FEE APPLICATION**<br><br><br><br>**Case No.:  2:24-cv-958**<br><br>**Honorable Ted Stewart**<br><br>**Magistrate Judge Daphne A. Oberg** |

I, James E. Magleby, declare as follows, pursuant to 28 U.S.C. § 1746:

1.       I am over twenty-one years of age and have personal knowledge of the facts in this declaration.  If asked to testify, I would and could testify as to the matters set forth herein.

2.      This declaration is submitted pursuant to the Court's "Memorandum Decision and Order Granting in Part and Denying in Part Plaintiff's Motions to Compel (Doc. Nos. 26 & 28)," awarding Plaintiff Pura Scents, Inc. ("Pura") the reasonable attorney fees it incurred in preparing short form discovery motions compelling Defendants' responses to Pura's first set of requests for production of documents and Defendants' initial disclosures.  [Dkt. 45 at 4].

3.      Our law firm, formerly known as Magleby Cataxinos & Greenwood, PC, and recently renamed Magleby & Cataxinos, PC ("MC" or the "Firm"), was retained to represent Pura in the above-captioned case (the "Case") in May of 2025.

4.      Accordingly, Pura claims fees for our firm's work in preparing Plaintiff's Short Form Discovery Motion to Compel Responses to First Set of Document Requests [Dkt. 26] and Plaintiff's Short Form Discovery Motion to Compel Defendants' Initial Disclosures [Dkt. 28] (the "Motions"), as well as a portion of the fees it has incurred in preparing the instant fee application.

## I.      MC AND ITS ATTORNEYS

5.      MC is a top-tier, commercial litigation and intellectual property law firm. The Firm has been "AV" rated for many years, the top rating available from Martindale-Hubble.  The Firm is currently ranked as a "Band 2" firm by Chambers and Partners ("Chambers") for Litigation: General Commercial, and the only small law firm in the state that has achieved this ranking.  *See* https://chambers.com/legal-rankings/litigation-general-commercial-utah-5:228:13289:1.  The Firm is also recognized by Best Lawyers,

and ranked as Tier 1 for Commercial Litigation by Best Law Firms.  The Firm is also ranked by Super Lawyers and Benchmark Litigation.

6.      I graduated with Honors from Swarthmore College (B.A. 1989) and the University of Utah Law School (J.D. 1995), where I was inducted into the Order of the Coif.  I clerked for the Honorable Pamela T. Greenwood of the Utah Court of Appeals from September 1995 to September 1996.

7.      I have been practicing law for over thirty years (30) years, and before going to law school was a trial paralegal in San Francisco, California.

8.      Prior to starting Magleby & Greenwood, PC, the predecessor law firm to MC, in 2005, I worked for a number of Utah's premier law firms, including Burbidge & Mitchell; Jones Waldo Holbrook & McDonough; Berman, Tomsic & Savage; and Ballard Spahr.  Thus, my law firm experience includes small boutique firms, a large local firm, and the Utah office of a national law firm.

9.      I have benefited over the years from working with some very skilled attorneys, including my early mentors at the Jones Waldo law firm who later took the bench, Justice Deno Himonas (retired) and the Honorable Andrew Stone (retired).  I also worked for some notable practitioners, such as Daniel Berman, Peggy Tomsic, Robert "Bob" Campbell, Scott Savage, David Watkiss, Steve Mitchell, and Richard Burbidge.

10.     I am A/V rated by Martindale-Hubbell, the highest rating available for an attorney.  I am ranked in Benchmark Litigation in the areas of Intellectual Property

3

Litigation and Commercial Litigation.  I have also been ranked in Utah Business Magazine's Legal Elite, by Super Lawyers, and by Best Lawyers.

11.     However, I believe the most significant validation of my work experience from any of these ranking services is my ranking in Chambers, which I believe is the most selective of the ranking entities, with the most rigorous review process.  I have been ranked by Chambers since 2010, but since at least 2017 I have been ranked in Band 1 for Commercial Litigation, and am currently one of seven such lawyers in the entire state.  *See* https://chambers.com/legal-rankings/litigation-general-commercial-utah-5:228:13289:1.  Although not directly related to this application, I note that MC is the only firm in the state that has more than one lawyer in Band 1, with my law partner Peggy Tomsic also being ranked.

12.     Two attorneys worked on the Motions, Jennifer Frasier Parrish, who has been working on the Case since MC began representing Pura, and Cody Winchester, who has become involved more recently to ensure the Case is timely prosecuted notwithstanding the other matters being handled by the Firm.

13.     Ms. Parrish is also Chambers ranked.  She graduated with a degree in Biology and a minor in Chemistry from the University of Utah in 1996.  After receiving her undergraduate degree, Ms. Parrish worked as a Programmer at Myriad Genetics, Inc., in Salt Lake City, Utah.  In 2000, Ms. Parrish received an M.B.A. from the University of Utah and worked in the computer software industry until entering law school in 2003.  Ms. Parrish received her J.D. with Honors from the University of Texas School of Law in Austin, Texas.

14.     Ms. Winchester is a graduate of Yale Law School (J.D. 1995), was the Yale Law Journal Book Reviews Editor, and clerked for United States Federal District Court Judge Dale A. Kimball from November 1998 to February 2000.  She has an LLM in tax from New York University (2023) and has been recognized by her peers as one of Utah's "Legal Elite" in the category of Intellectual Property as determined by an annual survey of members of the Utah bar conducted by Utah Business Magazine.  She teaches pre-trial procedure at the University of Utah Law School as an adjunct professor.

## II.     CALCULATION OF THE FEES INCURRED

15.     As an MC shareholder and lead counsel in this case, I am familiar with the timekeepers and billing records of the Firm, which are maintained in the Firm's ordinary course of business.  In addition to tracking my own time for all Case-related matters, I review all time entries for all timekeepers on a monthly basis in the course of preparing MC's invoices.  I have conducted another review in preparation of this fee declaration.

16.     MC's fees were incurred by Pura pursuant to a written engagement letter, wherein the Firm agreed to discount its rates.  A copy of the firm's discounted rates is attached as Exhibit A.  The rates reflected on the invoices discussed below are the discounted rates specified in the engagement letter.  A copy of the engagement letter is available upon request.

17.     Attached as Exhibit B are true and correct copies of the invoices MC has sent to Pura that include billing entries related to preparation of the Motions.  The invoices have been redacted to exclude information that does not pertain to the

Motions.  Pura has either paid these invoices or will do so in the ordinary course of business.

18.    Pursuant to firm policy, billing entries on such invoices are entered in the firm's system by the timekeeper who performed the services on the same day that the services are performed.

19.    The invoices were kept in the course of MC's regularly conducted business activities.  It is the regular practice of MC to make and maintain such invoices.

20.    I have reviewed all of MC's attorney fee and cost entries, with the goal of assessing the reasonableness of the fees and expenses incurred, and ensuring that the fees are related to work done on the Case.

21.    Not all of the billing entries related to the Motions are shown on Exhibit B; I exercised billing judgment to exclude and redact any entries that, while properly billed to Pura, were not strictly necessary to preparation of the Motions (such as, for example, entries related to reviewing Defendants' opposition memos and preparing client updates).[1]

22.    Attached as Exhibit C is a report that summarizes the information shown on the invoices in Exhibit B.  For each billing entry, the report shows the amount of time

---

[1] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended.  Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."  *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal citation omitted).

each attorney spent, the date on which the legal services were performed, and the attorney's hourly rate (at the discounted rate negotiated by Pura).

### III.    REASONABLENESS OF THE FEES REQUESTED

23.    I have reviewed carefully *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998) (providing four factors to analyze in the reasonableness inquiry: (1) "the complexity of the case"; (2) "the number of reasonable strategies pursued"; (3) "the responses necessitated by the maneuvering of the other side"; and (4) "the potential duplication of services"), and *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (providing twelve factors to analyze in the reasonableness inquiry: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorney"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases"). *Case* and *Johnson* are the cases commonly relied upon by federal judges in the District of Utah in analyzing fee applications. *See, e.g., James v. iMoney Tools, LLC*, No. 2:24-CV-00522-RJS, 2026 WL 357624, at *6 (D. Utah Feb. 9, 2026); *Nursa, Inc. v. Optima Care Jersey City LLC*, 2026 WL 905316, at *9-14 (D. Utah Apr. 2, 2026).

A.    **REASONABLENESS OF THE TIME SPENT**

24.    As noted in several of the above-cited authorities, not every factor will be relevant in each case, and many of the factors are not relevant here, where the fee application covers two discrete and relatively straightforward motions.  Taking into account the specific tasks performed, the total time reflected on Exhibit C is reasonable for preparation of the Motions.  Ms. Winchester drafted the Motions, which were reviewed for accuracy and edited by Ms. Parrish and me inasmuch as we had personally interacted with Defendants' counsel, had previously been working on the Case, and are counsel of record.

B.    **REASONABLENESS OF MC'S RATES**

25.    In rendering services and incurring expenses related to MC's representation of Pura in this lawsuit, MC made efforts to use the most economical means available under the circumstances.

26.    The discounted hourly rates of the attorneys involved in preparing the Motions range from between $815 to $625.

27.    Attorney rates in Utah are set based upon a number of factors.  Among others, experience and reputation are important, as well as the market for similar work.  This is consistent with the directive in *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988), that one of the factors to consider in assessing the reasonableness of an attorney's billing rate is whether the "attorney's billing rate [is] consistent with the rates customarily charged in the locality for similar services."  *Id*. at 990.

8

28.     The rates charged by MC are a reflection of the experience, skill, and reputation of MC's lawyers.  As described above, MC is a top-tier trial firm, with some high-profile results in complex intellectual property cases.  As described above, the professionals providing services in this matter are well qualified.

29.     All of the professionals who have provided services in connection with this matter logged their time in the ordinary course of MC's business.  MC's billing rates are typically set as of the first day of January each year, but sometimes change during the course of the year.  Those rates are set based on years in practice, skill level, experience, role in the case, and other factors.

30.     I am familiar with the hourly rates charged by attorneys of my experience, reputation, and skill level in the State of Utah, as well as the hourly rates charged by those with comparable skill and experience to the other timekeepers in the Firm that billed on the Case.

31.     It is my professional opinion that the hourly rates charged by MC are more than reasonable for the services rendered, for a number of reasons.

32.     The rates that are charged by MC are market rates, as demonstrated by the fact that the Firm's clients hire the Firm and its lawyers at these rates, and pay them.  In fact, other than legacy clients, recent and new clients pay rates higher than charged to Pura.  For example, new clients of the firm in 2024 and 2025 have agreed to, and paid, rates for my time in the range of $1,100 to $1,250 per hour.

33.     The rates charged to Pura for work on this Case are consistent with those charged in this area by attorneys of similar experience and skill for similar services.  I

9

frequently seek information about rates and billing, frequently talk to my colleagues at other firms, and review fee applications in MC handled cases and other cases. Through these experiences, I have become familiar with rates generally charged in this market for lawyers who handle litigation matters like the Case at hand and have comparable experience, years of practice, roles in litigation, and other factors.

34. Although the hourly rates charged by MC are a far cry from the $75 an hour charged in the *Dixie State Bank* case, they are also a far cry from the top end of rates charged in Utah by other firms. For example, hourly rates for partner-level attorneys at other firms are now often over $1,300 an hour, and range as high as $1,800 an hour.

35. Many law firms voluntarily provide Thomson Reuters their timekeeper billing rates several times each year. Thomson Reuters then shares the market rate date with the participating firms on a subscription basis. *See https://legalsolutions.thomsonreuters.co.uk/en/products-services/strategic-insights/features.html.* Attached as Exhibit C is a table of market rates for the Salt Lake City market for AmLaw 1–200 firms, the category most similar to MC, as reported by Thomson Reuters "Financial Insights," formerly known as "Peer Monitor, and saved on or around December 4, 2025.

36. According to Financial Insights, the *mean* standard rate for all attorneys in the AmLaw 1–200 firms in the Salt Lake City market is $774. Exhibit D at 1.

37. According to Financial Insights, the *mean* standard rate for partners in the AmLaw 1–200 firms in the Salt Lake City market is $873. *Id.*

38.     According to Financial Insights, the *mean* standard rate for associates in AmLaw 1–200 firms in the Salt Lake City market is $602.  *See id.*

39.     According to the American Intellectual Property Law Association 2025 Report of the Economic Survey, widely cited by courts and fee experts as reliable evidence of prevailing market rates for patent litigators, the *median* hourly billing rate for a partner practicing intellectual property law, depending on the number of full-time intellectual property lawyers and agents in the firm or corporation, ranges from between $580 to $1,510.  Excerpts are attached as Exhibit "E" (citing third quartile rate appropriate for highly experienced attorneys).

40.     Thus, the rates charged by MC for the services provided to Pura are well within reason for the market.

41.     Moreover, MC's fees have been found reasonable in its past fee applications.  *See, e.g., ClearOne Communications, Inc. v. Chiang*, 2010 WL 231253 (D. Utah Jan. 19, 2010) (finding claim for attorney fees submitted by MC "proper in every respect").

## IV.    FEES INCURRED IN PREPARING THE INSTANT FEE APPLICATION

42.     On April 9-10, 2026, I sought to obtain Defendants' agreement on the amount of fees to be paid and provided Exhibits B and C to Defendants' counsel, Chad Pehrson.

43.     I was unable to secure Defendants' agreement to pay the attorney fees that Pura incurred in connection with the Motions, and Mr. Pehrson did not respond to

the last email that I sent to him on April 10, 2026, or otherwise seem inclined to discuss any concerns he might have had with me.

44.     Accordingly, Pura also seeks reimbursement from Defendants for the attorney fees it has incurred in preparing this fee application.

45.     Ms. Winchester prepared the first draft of the instant application, consisting of a motion and this declaration.  On April 13, 2026, she billed 6.4 hours, which I find to be reasonable.  Although the cost to Pura will be higher as the fee application is not yet finalized, Pura seeks $4,960 (6.4 hours x $775) for its preparation. Invoices for work performed in April 2026 have not yet been generated, and we have not yet invoiced Pura for that work, but will do so in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 14th day of April 2026, at Salt Lake City, Utah.

_____
James E. Magleby

12