Chad S. Pehrson (12622) cpehrson@knh.law
Nathan Gardner (19537) ngardner@knh.law
KNH LLP
50 W Broadway, Ste 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

<table>
<tr><td colspan="2">THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</td></tr>
<tr><td>PURA SCENTS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ATMOS FRAGRANCE, INC., a Delaware corporation, and KRISTEN KNIGHT, an individual,<br><br>    Defendants.</td><td>DEFENDANTS' OPPOSITION TO PLAINTIFF'S FEE APPLICATION<br><br><br>Case No.: 2:24-cv-958<br><br>Honorable Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg</td></tr>
</table>

INTRODUCTION

Pura's counsel asks the Court to award $18,439.50 in attorney fees for two short-form discovery motions—each capped at 500 words under DUCivR 37-1, each running about two pages of substantive text, and each addressed to nothing more than Defendants' self-acknowledged missed early discovery deadlines. Pura itself called the underlying work "easy." Dkt. 26 at 2. On the question of quantum of fees, Pura as the movant bears the burden, *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Pura's submission does not carry it. The hours are excessive: 24.5 attorney hours—staffed across three senior litigators who layered two rounds of editorial review on senior-attorney drafting, and recorded in entries that

1

block-bill motion work together with unrelated case management. The rates are higher than the "discounted" rates Pura's lead counsel told this Court were "specified in the engagement letter," Magleby Decl. ¶ 16, and Pura's principal drafter is billed at a rate that does not appear on the engagement-letter rate sheet at all. Pura's $4,960 fees-on-fees request—itself roughly 37% of the underlying $13,479.50 award sought—is excessive on its face, and Pura concedes that those fees have not yet been incurred and additional partner time will be sought when the next invoice issues. Magleby Decl. ¶ 45; Dkt. 48 at 6 n.3. And the $18,439.50 demand is materially out of proportion to the nature of the discovery motions and the stakes of the case—a procedural discovery dispute defended by a near-bankrupt startup and a former contractor who performed limited work for minimal pay.  The cumulative effect of these deficiencies is that Pura's submission is not a good-faith request for reasonable fees. It is grounds, on its own, to deny the award substantially or in full.

**I. LEGAL STANDARD**

The Tenth Circuit applies the lodestar method: reasonable hours multiplied by a reasonable hourly rate. *Case*, 157 F.3d at 1249–50. As the movant, Pura bears the burden of proving the reasonableness of both, and that burden is exacting: Pura must "prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

The prevailing party must exercise the same billing judgment an attorney would exercise when billing a paying client. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250 (citation omitted). The Court may "reduce the reasonable hours awarded if the number of compensable hours claimed . . .

includes hours that were unnecessary, irrelevant and duplicative." *Id.* And where billing records are imprecise, inflated, or generalized, the Court may reduce the award accordingly. *See Jane L. v. Bangerter*, 828 F. Supp. 1544, 1548–49 (D. Utah 1993), *aff'd in relevant part*, 61 F.3d 1505, 1510 (10th Cir. 1995) (upholding 35% reduction for "imprecise, inflated, and generalized recording methods")

## II. THE HOURS BILLED ARE EXCESSIVE FOR THE WORK PERFORMED

### A. 24.5 hours for two 2-page "easy" motions cannot withstand scrutiny.

Each underlying motion was a Short Form Discovery Motion under DUCivR 37-1, capped at 500 words "exclusive of caption and signature block." Each ran about two pages of substantive text. Dkts. 26, 28. The issues were simple: Defendants—a near-bankrupt startup and a former contractor—failed to timely serve initial disclosures and certain discovery responses, and acknowledged the failure. Pura itself characterized its first motion as "easy." Dkt. 26 at 2. For these two filings, Pura claims 18.1 hours and $13,479.50 (with additional hours presented for counting those hours for the Court). That figure is excessive on its face. No paying client would pay this much for two simple 500-word motions to address a missed deadline. The motions presented no novel legal questions and followed well-trodden Rule 37 procedure. Pura's 18.1-hour total is not a function of the work the motions required; it is a function of how many lawyers were assigned to do that work—a problem addressed below.

### B. Three-Senior-Attorney Staffing Was Duplicative.

Pura's own description establishes the staffing problem. Ms. Winchester drafted; Ms. Parrish reviewed and edited; Mr. Magleby reviewed and edited. Magleby Decl. ¶ 24. None of the three is a junior associate being trained on motion practice. They are senior, accomplished trial

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

lawyers.  Mr. Magleby is a thirty-year litigator whose past results include a $133 million unanimous trade-secret verdict, a $45 million arbitration recovery, and an approximately $55 million contingency-fee recovery in USA Power, LLC v. PacifiCorp. *See generally Magleby Cataxinos & Greenwood v. Schnibbe*, 562 P.3d 679, 682 (Utah 2024); Magleby Decl. Ms. Parrish is a partner whose credentials include an MBA. Magleby Decl. ¶ 13. And Ms. Winchester—identified by Pura as the principal drafter—is a 1995 Yale Law School graduate with more than thirty years of intellectual-property litigation experience. *Id.* ¶ 14. This is not a deficient roster. It is the opposite—and that is the problem. The Tenth Circuit's rule is direct: "[I]f the same task is performed by more than one lawyer, multiple compensation should be denied." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983); *see also Jane L.*, 828 F. Supp. at 1549–50. Two 500-word filings reciting that the opposing party missed a deadline did not require senior partners to layer two rounds of editorial review on senior-attorney drafting.The 2/02/2026 entries illustrate the duplication concretely: in a single day, three attorneys collectively logged 6.7 hours and $5,064.50 in fees—including two separate entries from Mr. Magleby. Magleby Decl. Ex. C. The duplication should be cut.

### C. Block billing further undermines the application.

Several entries combine motion-related work with tasks plainly outside the scope of "bringing" the motions. Two examples illustrate.First, the 2/03/2026 entry for Ms. Parrish (1.10 hours, $687.50) bundles motion work with general case management. The single entry includes "email J. Magleby regarding upcoming activity in case and plan to immediately deal with missed disclosures and need to start draft of infringement contentions"; "emails regarding past delivery of scheduling order to clients and new deadlines"; and emails about a "missing exhibit and

possible errata." Magleby Decl. Ex. B at 7. None of those tasks was "incurred in bringing" a motion to compel.Second, the 2/10/2026 entry for Ms. Parrish (1.30 hours, $812.50) presents the same problem at a larger scale. The single entry combines review of the initial-disclosures motion with "conference with J. Magleby and C. Winchester regarding discovery motion strategy"; emails about "submitting first statement of discovery issues tomorrow"; and "draft RTS [Request to Submit] for same and forward to E. Gibson for filing tomorrow." Id. at 8. A Request to Submit is a separate procedural filing, and general "discovery motion strategy" is by its terms broader than these two motions.Block-billed entries of this kind prevent the Court from determining what portion of the time was "incurred in bringing" the awarded motions and are presumptively unreasonable. Case, 157 F.3d at 1250; see also Jane L., 828 F. Supp. at 1548–49 (reducing hours where records failed to "adequately designate how much time was allotted to specific tasks"). The block-billed time should be reduced or disallowed.

## III. PURA'S RATES EXCEED THE ENGAGEMENT-LETTER RATES AND ARE NOT JUSTIFIED FOR ROUTINE MOTION PRACTICE

### A. The rates billed exceed the discounted rates Pura disclosed.

Pura represents that the invoiced rates "are the discounted rates specified in the engagement letter" and attaches Exhibit A as "a copy of the firm's discounted rates." Magleby Decl. ¶¶ 16–17. The numbers do not match. Exhibit A lists Mr. Magleby at $795 and Ms. Parrish at $605. Id. Ex. A. The rates Pura seeks are $815 and $625, id. Ex. C—$20 per hour above the disclosed engagement-letter rates for both. Pura's later acknowledgment that "MC's billing rates are typically set as of the first day of January each year, but sometimes change during the course

5

of the year," id. ¶ 29, may describe the firm's internal practice but does not reconcile with the engagement-letter representation.

**B. Ms. Winchester's $775 rate does not appear on the engagement-letter rate sheet at all.**

Ms. Winchester is the principal drafter and the largest single timekeeper. She is credited with 10.9 of the 18.1 hours billed and $8,447.50 of the $13,479.50 sought—nearly two-thirds of the total request. Magleby Decl. ¶ 24, Ex. C. Yet Ms. Winchester does not appear on Exhibit A, the document Mr. Magleby identifies as "a copy of the firm's discounted rates" specified in Pura's engagement letter. *Id.* ¶ 17 & Ex. A. The rate Pura seeks for her—$775 per hour—appears nowhere in the engagement-letter rate sheet, in any form. *Id.* The representation in ¶ 16 that "[t]he rates reflected on the invoices...are the discounted rates specified in the engagement letter" therefore cannot be accurate as to the very attorney whose time accounts for the majority of the request, and the record contains no evidence that her $775 rate is "discounted" from anything.

**C.  Rates used by international law firms for sophisticated work are not appropriate comparators.**

International law firm rates used for sophisticated matters are not justified for routine short-form motion practice in this case.  The Tenth Circuit looks to "what the evidence shows the market commands for . . . analogous litigation." *Case*, 157 F.3d at 1255 (citation omitted; emphasis added). Pura's own market evidence does not describe analogous work. Pura submits an AmLaw 1–200 survey reporting Salt Lake City mean rates of $873 for partners and $602 for associates. Magleby Decl. Ex. D at 2. The mismatch is twofold. First, the AmLaw 1–200 reflects rates at the country's largest international and national law firms—not those of a Salt Lake City

litigation boutique like Pura's counsel. Second, that data captures rates for all work such firms perform—complex commercial litigation, transactional work, regulatory matters—not routine 500-word discovery motions on a case whose merits damages have long been known to sit in the low five figures.  The factors that drive a reasonable rate confirm the mismatch. The relevant inquiry includes "the novelty and difficulty of the questions involved" and "the skill requisite to perform the legal service properly." *Hensley*, 461 U.S. at 430 n.3 (adopting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Both sit at the low end of the spectrum here. Drafting a 500-word motion to compel after a missed deadline is not the kind of work that justifies above-market rates—and the rates Pura selected as a benchmark belong to a category of firm Pura's counsel has marketed itself as being deliberately distinct from.

**IV. THE $4,960 "FEES ON FEES" REQUEST IS NOT YET INCURRED AND EXCEEDS THE COURT'S ORDER**

The Court's March 31, 2026 Order awarded Pura "reasonable expenses, including attorney's fees, *incurred in bringing these motions*." Dkt. 45 at 4 (emphasis added); *see also* Fed. R. Civ. P. 37(a)(5)(A). Pura's $4,960 fees-on-fees request fails that standard on three independent grounds.

First, the request is excessive on its face. Pura claims 6.4 hours at $775 to prepare a six-page fee application that primarily recites standard authorities, and footnotes that an *additional* 0.8 hours of partner time "is not include[d]." Magleby Decl. ¶¶ 41, 44; Dkt. 48 at 6 n.3. The $4,960 figure thus understates what Pura ultimately intends to seek—and even at $4,960, Pura asks for an amount equal to roughly 37% of the underlying $13,479.50 award it requests. That is

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

not the billing judgment "an attorney would [exercise] when billing a paying client." *Case*, 157 F.3d at 1250.

Second, the Court's Order is bounded by its own language. The Order awarded fees "incurred in *bringing* these motions." Dkt. 45 at 4 (emphasis added). The motions—Dkts. 26 and 28—were filed and decided before the March 31 Order. The fee-application work post-dates the Order entirely; it was incurred in litigating the amount of fees, not in bringing the motions.

Pura's fees-on-fees claim is also undermined by what actually happened in the meet-and-confer Pura now invokes. Pura summarizes that history as Defendants' refusal to "secure agreement on the amount of fees." Magleby Decl. ¶¶ 42–43. Having put the meet-and-confer at issue, Pura cannot obscure what occurred. On April 10, 2026—four days before filing—Mr. Magleby emailed Defendants' counsel to "initiate a meet and confer." He wrote that Pura's "rough calculation" of recoverable fees was "between about $11,800 and $18,000" and proposed resolving for $11,800. Pehrson Decl. Ex. 1. When Defendants asked for supporting time entries, Mr. Magleby that evening transmitted invoices and an Excel calculation showing $13,479.50—$1,679.50 above his opening number. Pehrson Decl. Ex. 2. Pura then filed this application seeking $18,439.50—$439.50 above the top of its own stated range and $6,639.50 above its opening offer. That escalation, against the backdrop of a meet-and-confer Pura now characterizes as Defendants' unreasonable refusal, is difficult to square with Pura's request that Defendants pay an additional $4,960 because the meet-and-confer "failed."

### V. PROPORTIONALITY COUNSELS FURTHER REDUCTION

Although the Court already ruled that the extremely low stakes of this case do not bar Pura from recovering some fees, Dkt. 45 at 4, entitlement and amount are distinct inquiries. The

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

lodestar product "does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. The Court retains broad discretion to reduce a fee where the amount sought is materially disproportionate to the work performed, the result achieved, or the stakes of the dispute. *Case,* 157 F.3d at 1249–50. Three independent measures show that disproportion here.

### A. The Work Performed Was "Easy" and Limited.

The work was the preparation of two Short Form Discovery Motions under DUCivR 37-1—each capped at 500 words and running roughly two pages of substantive text. Dkts. 26, 28. Both presented an identical posture: Defendants missed a deadline, and Pura asked the Court to compel compliance.

The motions raised no novel legal question. The Rule 37 framework is well-trodden, and Pura's senior counsel has practiced in this area for more than three decades. Magleby Decl. ¶¶ 11–14. Pura itself called the work "easy." Dkt. 26 at 2. The work did not require deposition preparation, expert work, claim construction, dispositive-motion practice, or any other category of work for which top-of-market commercial-litigation rates are typically billed. A fee proportional to the work must reflect what the work actually was. *See Hensley*, 461 U.S. at 430 n.3 ("the novelty and difficulty of the questions involved" and "the skill requisite to perform the legal service properly" are core proportionality factors).

### B. Pura's Success Was Procedural, Not Substantive.

"[T]he most critical factor [in determining a reasonable fee] is the degree of success obtained." *Hensley*, 461 U.S. at 436. Courts in this District have applied that principle to

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

substantially reduce fee awards where success was narrow. *See Jane L., 828 F. Supp. at 1552–53* (reducing lodestar by 75% under *Hensley*'s "limited success" prong), *aff'd in relevant part*, 61 F.3d at 1510. Pura's success here is narrower still: it obtained no substantive relief or adjudication of rights—only the eventual receipt of disclosures that the Court itself deemed moot.

### C. The Award Sought Is Disproportionate to What Is at Stake.

Pura's burden is to "prove and establish the reasonableness of each dollar, each hour, above zero." Mares, 801 F.2d at 1210. Pura's request is materially out of balance with the realities of this case.  Defendants are a near-bankrupt startup and a former independent contractor whose role at Pura was, on Pura's own trade-secret disclosure, narrow and operational. The context matters, including de minimis sales of the accused products, a near-bankrupt startup, and Ms. Knight's minimal contractor compensation at Pura. Dkt. 45 at 3–4. The award Pura seeks—jointly against both Defendants—will subject Ms. Knight to personal liability exceeding potential damages in this case.  That mismatch is what the proportionality factor weighs. The Tenth Circuit measures reasonableness against the rates "the market commands for . . . analogous litigation." *Case*, 157 F.3d at 1255. The analogous litigation here is not complex litigation against well-resourced corporate defendants. It is a procedural discovery dispute defended by a struggling startup and an individual contractor. On that record, Pura has not justified its $18,439.50 demand.

### D. The Court Has Discretion to Deny the Request Substantially or Entirely.

The deficiencies catalogued above—excessive hours, duplication, block billing, rate inflation, fees-on-fees overreach, and disproportion—are not isolated. They are systemic features

of Pura's submission. Where a fee applicant requests a grossly inflated amount, courts have discretion to deny in full or substantially in full. The Seventh Circuit explained why in *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980): requiring courts to award "a reasonable fee when an outrageously unreasonable one has been demanded" would "encourage[]" unreasonable demands by reducing the only consequence to "reduction of their fee to what they should have asked for in the first place."

That principle has force here. Pura demanded $18,439.50 on the basis of records that exceed Pura's own disclosed engagement-letter rates, fold unrelated case management into motion-related entries, stack three senior attorneys on 500-word filings, and seek reimbursement for invoices that do not yet exist on work that was not performed on the two discovery motions. The pattern is not consistent with the billing judgment Pura's burden requires. *See Case*, 157 F.3d at 1250. The Court has discretion to recognize that Pura's submission was not the good-faith request the rule presumes. Denial of the request, or a nominal award, would be within that discretion.

CONCLUSION

Pura has not met its burden of proving the reasonableness of the $18,439.50.

DATED: April 28, 2026

*Respectfully submitted,*

KNH LLP

*/s/ Chad S. Pehrson*
Chad S. Pehrson
Nathan Gardner
*Attorneys for Defendants*

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

KNH

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this Opposition to Application for Attorney Fees complies with the word count limits set forth in DUCivR 7-1(a)(4)(B).

According to the word count feature of the software used to prepare this document (Microsoft Word), this brief contains 2941 words, excluding the parts of the document exempted by DUCivR 7-1(a)(4)(C) (the face sheet/caption, table of contents, table of authorities, signature block, certificate of service, and exhibits).

The total word count is within the 3,100-word limit established by the Local Rules for this type of motion.

DATED this 28th day of April, 2026.

/s Chad S. Pehrson

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101



50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

K N H

13