Chad Pehrson (12622) cpehrson@knh.law
Nathan Gardner (19537) ngardner@knh.law
KNH LLP
50 W Broadway, Ste 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646

*Attorneys for Defendants*

<table>
<tr><td colspan="2">THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</td></tr>
<tr>
<td>PURA SCENTS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ATMOS FRAGRANCE, INC., a Delaware corporation, and KRISTEN KNIGHT, an individual,<br><br>    Defendants.</td>
<td><b>DEFENDANT ATMOS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT</b><br><br><br>Case No.: 2:24-cv-00958-TS-DAO<br><br>Judge: Ted Stewart<br>Magistrate Judge: Daphne A. Oberg</td>
</tr>
</table>

Defendant Atmos Fragrance, Inc. ("Atmos") moves this Court to dismiss the First, Second, Third, Fifth, and Sixth Claims for Relief in Plaintiff Pura Scents, Inc.'s ("Pura") First Amended Complaint [Dkt. 47] ("Amended Complaint") for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The patent infringement claims parrot the language of the asserted claims without alleging facts showing how the Accused Products practice each element. The trade secret claims against Atmos are derivative of factually deficient allegations against Knight and the Investor Individuals, and are independently insufficient. The Court should dismiss with prejudice.

**I.  BACKGROUND**

1

On April 14, 2026, Pura filed the First Amended Complaint. [Dkt. 47.] In granting Pura leave to amend, the Court declined to address Defendants' futility arguments and held that those arguments "are more appropriately suited for a dispositive motion." [Dkt. 44 at 3.] This is that motion.

The Amended Complaint asserts six claims for relief. The First, Second, and Third Claims allege patent infringement against Atmos under 35 U.S.C. § 271(a), (b), and (c) of U.S. Patent Nos. 10,967,091 (the "'091 Patent"), 11,213,601 (the "'601 Patent"), and 12,329,886 (the "'886 Patent"), respectively. The Fifth and Sixth Claims allege trade secret misappropriation against Atmos and Knight under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and the Utah Uniform Trade Secrets Act, Utah Code §§ 13-24-1 *et seq.* ("UTSA"). The Fourth Claim, for breach of contract, is asserted against Knight only and is the subject of Knight's separate motion.

## II.   RULE 12(B)(6) PLEADING STANDARD

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

These standards apply with full force in patent cases. *See The Beer Barrel, LLC v. Deep Wood Brew Prods., LLC*, No. 16-440, 2016 WL 5936874, at *3 (D. Utah Oct. 12, 2016) ("[T]he

2

Rule 8 pleading standards as construed by the Supreme Court in . . . *Iqbal* . . . and *Twombly* . . . govern in patent cases."). A direct infringement claim does not satisfy *Twombly* and *Iqbal* "where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1142–43 (N.D. Cal. 2019). Allegations made "on information and belief" do not rescue an otherwise conclusory complaint.

## III.   THE FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF (PATENT INFRINGEMENT) FAIL TO STATE A CLAIM.

To plead direct infringement, a plaintiff must allege facts showing that the accused product practices *every element* of at least one asserted claim. *AlterG*, 388 F. Supp. 3d at 1142–43. Conclusory recitation of claim language is not enough; "merely reciting the claim elements and [stating the defendant] infringes [is] not sufficient." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The Amended Complaint does not satisfy this standard for any of the three asserted patents.

### a.   *Pura fails to plead facts showing infringement of the '886 Patent.*

Claim 1 of the '886 Patent requires, among other things: (a) "one or more processors" and "one or more memory storing instructions"; (b) "receiving scheduling data associated with [a] scent dispensing device installed in a particular room"; (c) "determining a schedule" based on a timeframe; (d) "monitoring the schedule to determine that the schedule [should] be initiated based on the timeframe"; and (e) "initiating a dispensing mechanism of the device to emit a scent in the particular room based on the scheduling data."

Rather than alleging facts showing how the Accused Products satisfy each element, Pura recites the claim language and substitutes generic references to "the Accused Products" and "the app":

> Through the app, the scheduling instructions are executed to perform various operations, including receiving the scheduling data with particular data associated with an Accused Product installed in a particular room, determining the schedule associated with the device within a particular room, monitoring the schedule to determine that the device should be initiated based on the preselected timeframe, and initiating the mechanism of the scent dispensing device to emit the selected fragrance in a particular room according to the scheduling data.

Am. Compl. ¶ 114. This tracks Claim 1 nearly verbatim. The deficiency is the same across each element:

**Processors and Memory.** Pura does not identify what processor or memory architecture the Accused Products contain, or what instructions are stored. Every modern consumer electronic device has processors and memory; alleging their existence in the abstract does not make infringement plausible.

**Receiving Scheduling Data.** Pura alleges only that the app involves "receiving the scheduling data with particular data associated with an Accused Product installed in a particular room"—a word-for-word echo of the claim. There is no allegation of what data is received, from where, in what format, or how the system associates data with a room.

**Monitoring the Schedule.** Pura repeats the claim language without explaining what "monitoring" means in the accused system—whether via a background process, cloud-based server, or push notification.

**Initiating a Dispensing Mechanism.** Pura parrots the claim without explaining how the Accused Products dispense fragrance—whether by heating element, fan-based system, or ultrasonic diffusion.

Pura's only attempt at factual specificity appears in Paragraph 112, which describes a user-facing scheduling interface—the ability to "set up to five individual schedules per diffuser" with start and end times. But a user interface does not, without more, establish that the underlying system contains the specific processors, memory, monitoring functions, and dispensing mechanisms required by Claim 1. The Third Claim should be dismissed.

### b.   Pura fails to plead facts showing infringement of the '091 Patent.

Claim 1 of the '091 Patent requires, among other things, "a switching mechanism including the first heating element associated with the first vial bay, and the second heating element associated with the second vial bay," and "a wireless interface configured to wirelessly communicate with a *management server* to receive control data stored on the management server." Am. Compl., Ex. A (emphasis added).

The Amended Complaint includes screenshots of the Atmos app and depictions of physical components of the Accused Products. *See* Am. Compl. ¶¶ 84–95. But these allegations show only that the Accused Products have an app and Wi-Fi connectivity—features common to virtually every smart-home device. Pura does not identify what constitutes the "management server" in the accused system, what specific control data is stored on it, or how a controller in the Accused Products processes that data to dispense fragrance based on "an attribute of the particular room." Pura's pleading also fails to identify any "switching mechanism" as Claim 1 requires; it alleges only that the diffuser has heating elements and an app for adjusting fragrance intensity, *see Id.* ¶¶ 85–87, which says nothing about the claimed switching architecture.

5

Adding photographs of a product without mapping its features to the limitations of the asserted claim does not state a plausible infringement claim. *In re Bill of Lading*, 681 F.3d at 1339. The First Claim should be dismissed.

### c. *Pura fails to plead facts showing infringement of the '601 Patent.*

Claim 1 of the '601 Patent requires "a first sensor proximate to the first heating element . . . configured to measure a first temperature of the first heating element and to provide a first feedback based on the first temperature," and a controller that adjusts the heating element "based at least in part [on] the first feedback to maintain the adjusted temperature at the adjusted set point during a diffusion of the first fragrance solution." Am. Compl., Ex. B. The patent's distinguishing feature is its specific feedback-based temperature control architecture.

The Amended Complaint's allegations on this point are doubly hedged. Paragraph 103 alleges, "on information and belief," that "the heating elements include sensors that detect temperature and provide feedback to the heating element control." Am. Compl. ¶ 103. Paragraph 104 alleges, also "on information and belief," that fragrance intensity "is controlled by different temperatures from the heating element." *Id.* ¶ 104. These hedged allegations say nothing about whether the accused feedback mechanism actually operates as the controller of Claim 1 requires, much less how. Pura sent Atmos a notice letter regarding the '601 Patent in September 2024, *see Id.* ¶ 117, and has therefore had over a year to investigate Atmos's publicly available products. "On information and belief" cannot substitute for facts the plaintiff has had ample opportunity to ascertain. *See Balfour Beatty*, 2020 WL 13049359, at *4. The Second Claim should be dismissed.

### d. *The induced and contributory infringement allegations fail across all three patents.*

50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

H
Z
K

To state a claim for induced infringement under 35 U.S.C. § 271(b), a plaintiff must allege facts showing that the defendant knowingly induced infringement and possessed the specific intent to encourage another's infringement. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The Amended Complaint alleges only that "Atmos encourages its users to use the Accused Products in an infringing manner including by using the app to control fragrance schedules," Am. Compl. ¶ 149; *see also Id.* ¶¶ 96, 106 (similar allegations for the '091 and '601 Patents). This is circular. It assumes the very infringement that must be established. Pura alleges no specific instructions Atmos provides users, no facts showing how those instructions direct users to practice each element of any asserted claim, and no facts about Atmos's knowledge beyond receipt of Pura's notice letters.

The contributory infringement claims fare no worse. Pura alleges Atmos sells the Accused Products "knowing them to be especially made or especially adapted for practicing the invention" and "not a staple article or commodity of commerce suitable for substantial non-infringing use." Am. Compl. ¶¶ 98, 107, 116. These are conclusions, not facts. A consumer fragrance diffuser plainly has non-infringing uses—manual operation, use without scheduling, or operation without the specific architectures claimed in the asserted patents. Pura pleads no facts to overcome that obvious staple-article problem.

Both theories of indirect infringement also fail because they require a predicate of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920 (2014). Because Pura has not plausibly pled direct infringement of any of the three patents, the indirect infringement claims fall with them.

## IV.  THE FIFTH AND SIXTH CLAIMS FOR RELIEF (TRADE SECRET MISAPPROPRIATION) FAIL TO STATE A CLAIM.

To state a claim under the DTSA, a plaintiff must adequately allege "(1) the existence of a trade secret . . . ; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1210 (D. Utah 2023). The UTSA elements are substantially similar. *Id.* Conclusory allegations of "taking" or "using" trade secrets do not suffice. *Iqbal*, 556 U.S. at 678.

### a.  *The trade secret claims against Atmos are derivative and collapse with the underlying allegations.*

Pura's theory is that Atmos is liable because Knight and the Investor Individuals (Tyson Andrus, Jeremy Andrus, and Aaron Derose) disclosed Pura's trade secrets to Atmos, who then used them to develop competing products. *See* Am. Compl. ¶¶ 66, 170–174, 183–186. Atmos's liability depends entirely on those underlying allegations of disclosure. Because the underlying allegations rest on a vague inevitable disclosure theory and lack any factual specificity—as detailed in Defendant Knight's separate motion to dismiss, which Atmos joins and incorporates by reference—the derivative claims against Atmos fail with them.

### b.  *The claims against Atmos are independently deficient.*

Even setting aside the derivative nature, the claims against Atmos are independently deficient. Pura alleges "on information and belief" that the Investor Individuals and Knight "disclosed, to Atmos, Pura's confidential or trade secrets information, including information

<div style="margin-left:2em">50 West Broadway Ave Ste 900<br/>Salt Lake City Utah 84101</div>



regarding Pura's product designs and development plans, market strategies, business operations, and customers and ambassadors." Am. Compl. ¶ 66. But Pura does not identify **what** specific trade secrets Atmos received, **when** or **how** they were communicated, or **how** Atmos incorporated any specific trade secret into any particular product, system, or strategy.

Instead, Pura relies on allegations so broad they encompass virtually any business activity: that the positions of Knight and the Investor Individuals "led to and will continue to lead to the use or disclosure of Pura's trade secrets," *Id.* ¶¶ 173, 185, and that Knight "has thus necessarily used and disclosed Pura's confidential and trade secret information," *Id.* ¶¶ 174, 186. These are legal conclusions—not factual allegations—rooted in the inevitable disclosure doctrine. Courts have rejected or approached the inevitable disclosure doctrine skeptically because it can operate as a restraint on employee mobility absent proof of actual or threatened use or disclosure. *See Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999).

Pura's only attempt at specificity is the allegation that "one of the Investor Individuals received a slide deck on Pura's business operations" and that an unidentified Investor Individual told an unidentified "Pura representative that the decision to launch Atmos was inspired by the revenue figures in the slide deck." Am. Compl. ¶¶ 56–57. This is no more concrete than the rest of the pleading. Pura does not identify which Investor Individual received the deck, what was in it, when it was disclosed, what specific trade-secret information it contained, or how that information was used in any specific Atmos product or business decision. "Inspired by . . . revenue figures" is not misappropriation under the DTSA or UTSA.

> *c. The Sixth Claim fails to identify any trade secrets on its face.*

The Sixth Claim suffers from a further, fundamental defect: it fails to identify any trade secrets at all. Paragraph 180 introduces a list with the heading "These trade secrets include (among other things)," but the items that follow describe the secrecy *measures* Pura allegedly takes—permission settings on storage drives, two-factor authentication, NDAs, and similar safeguards—not the secrets themselves. Am. Compl. ¶ 180(a)–(g). On its face, the UTSA claim identifies zero trade secrets. *See Id.* ¶ 167 (DTSA claim, listing categories of trade secrets); *also see Id.* ¶ 180 (UTSA claim, listing only secrecy measures). The Sixth Claim is dismissible on the face of the pleading.

Even setting aside that drafting failure, the categories listed in Paragraph 167 of the DTSA claim are too broad to function as trade secrets: "confidential financial and customer data stored in Pura's Shopify platform," "information from Pura's Ambassador Program Database," and "information regarding Pura's financial outlook and projections, marketing and growth strategies, customer data, and product developments." That last bucket is essentially Pura's entire business. Identifying "among other things" categories does not give Atmos fair notice of what is being asserted. *Cf. Iqbal*, 556 U.S. at 678.

Pura pleads words, not facts. The Court should dismiss the Fifth and Sixth Claims with prejudice.

## V.  CONCLUSION

For the reasons above, Defendant Atmos Fragrance, Inc. respectfully requests that the Court dismiss the First, Second, Third, Fifth, and Sixth Claims for Relief with prejudice.

Dated: April 28, 2026

Respectfully submitted,

10

**KNH LLP**

/s/ Chad Pehrson
Chad Pehrson (12622)
Nathan Gardner (19537)



50 West Broadway Ave Ste 900
Salt Lake City Utah 84101

11