Chad Pehrson (12622)
Nathan Gardner (19537)
**KNH LLP**
50 W Broadway, Ste 900
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
cpehrson@knh.law
ngardner@knh.law

*Attorneys for Defendants*

<table>
<tr><td colspan="2" align="center"><b>UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF UTAH</b></td></tr>
<tr>
<td>PURA SCENTS, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>v.<br><br>ATMOS FRAGRANCE, INC., a Delaware corporation, and KRISTEN KNIGHT, an individual,<br><br>   Defendants.</td>
<td align="center"><b>DEFENDANT ATMOS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT [DKT. 53]</b><br><br>Case No.: 2:24-cv-00958-TS-DAO<br><br>Judge: Ted Stewart<br><br>Magistrate Judge: Daphne A. Oberg</td>
</tr>
</table>

Defendant Atmos Fragrance, Inc. ("Atmos") submits this reply in support of its Motion to Dismiss the First Amended Complaint [Dkt. 53] (the "Motion"). Pura's combined opposition [Dkt. 60] ("Opp.") rests on two moves. First, it recasts the Motion as a demand for a "heightened" pleading standard and then argues against a standard Atmos never invoked. Second, it points to documents outside the Amended Complaint—a Trade Secret Disclosure served October 10, 2025, and Infringement Contentions served February 20, 2026—to supply the facts the pleading lacks. The first move sets up a strawman. The second concedes the Motion: a complaint that states a claim does not need discovery papers to explain it.

## I. THE MOTION ASKS FOR IQBAL, NOT A "HEIGHTENED" STANDARD—AND THE AMENDED COMPLAINT FAILS UNDER IQBAL.

Atmos agrees that a patentee "need not 'prove its case at the pleading stage.'" *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citation omitted). Nor must it plead infringement element by element. *Id.* But the same opinion draws the line that decides this Motion: "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353. Applying that rule, the Federal Circuit affirmed dismissal of two of the four patents before it—one because the allegations were "conclusory, merely track the claim language, and do not plausibly allege" the claimed configuration, *id.* at 1355, and another because the allegations contradicted the plaintiff's own infringement theory, *id.* at 1354. The question is not whether Pura must prove anything. It is which side of *Bot M8*'s line the Amended Complaint sits on.

## II. DISCOVERY DISCLOSURES CANNOT CURE THE PLEADING.

Pura leads with the assertion that it has "already produced the detailed information that Defendants speciously claim is missing from Pura's pleading"—its Trade Secret Disclosure and its Infringement Contentions. Opp. 2; *see id.* at 7, 13. That argument refutes itself. A Rule 12(b)(6) motion tests "whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation omitted). A court may also consider exhibits attached to the complaint and documents incorporated into it by reference and central to the claims. *Id.* Neither disclosure is attached to, incorporated in, or even mentioned in the Amended Complaint. Pura's own authorities are

consistent: every one of them—*Bot M8*, *Disc Disease*, *Nalco*, *Gracenote*—assessed the operative pleading, not extrinsic discovery papers. The Local Patent Rules sequence disclosures. They do not amend Rule 8 or Rule 12(b)(6). If the Amended Complaint needs the Infringement Contentions to give Atmos notice of the infringement theory, then the Amended Complaint does not state a claim.

## III. THE PATENT CLAIMS REMAIN INSUFFICIENTLY PLEADED.

### A. The '886 Patent.

Pura says the Amended Complaint "methodically walks through each limitation of Claim 1." Opp. 4. The paragraph doing the walking, ¶ 114, reproduces Claim 1 nearly verbatim, and the supporting allegations restate the elements at the same altitude: the products "contain processors to enable smart features," ¶ 110, and the app performs "receiving the scheduling data," "monitoring the schedule," and "initiating the mechanism," ¶ 114. That is the pleading *Bot M8* affirmed dismissing: allegations that "merely track the claim language." 4 F.4th at 1355. *Disc Disease* does not rescue it. There, the technology was a simple mechanical device, the patents were attached, and photographs of the accused products let the court see the claimed features. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). *Bot M8* itself explains that the required detail "will vary" with "the complexity of the technology" and "the materiality of any given element." 4 F.4th at 1353. A networked system of processors, stored instructions, scheduling data, schedule monitoring, and dispensing initiation is not a spinal brace, and no screenshot in the Amended Complaint shows anything "monitoring" or "initiating." A user-facing schedule menu, ¶ 112, establishes only that the app has a scheduling screen—something equally true of thermostats, sprinkler controllers, and coffee makers that practice no one's patent.

3

**B. The '091 Patent.**

Pura's opposition describes its own pleading method candidly: from allegations of an app and Wi-Fi, "it is reasonable to infer the presence of" the claimed switching mechanism, and the same allegations "plausibly imply the existence of" a management server. Opp. 8. But where a complaint pleads facts "merely consistent with" liability, it "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Virtually every smart-home product has an app and Wi-Fi; if those features supported an inference of the specific claimed architecture, every connected device would plausibly infringe. *Bot M8* rejected the same approach—pointing to components without ever saying which one satisfies the limitation does not plausibly allege the claimed configuration. 4 F.4th at 1355. The Amended Complaint never says what the "management server" is, what control data it stores, or where the claimed switching architecture resides.

**C. The '601 Patent.**

Pura defends its doubly hedged "information and belief" allegations, ¶¶ 103–104, on the ground that internal sensor architecture is uniquely in Atmos's possession. But Pura alleges it raised its patents with Atmos by letter in September 2024, ¶ 118, and the Accused Products have been on the open market throughout. A plaintiff with more than a year of access to the accused products must plead facts, not beliefs. The allegations still never say how any accused feedback mechanism maintains an adjusted set point as Claim 1 requires; they restate the limitation and append a qualifier.

**D. Indirect Infringement.**

The opposition grounds knowledge in ¶¶ 45–58 and 118–121: the Investor Individuals were "unquestionably aware of Pura's patents" because intellectual property "would have been

central" to their investments. Opp. 11–12. For the '886 Patent, that theory is chronologically impossible. The patent issued June 17, 2025, ¶ 78—six months after this suit was filed—and every allegation about the Investor Individuals' dealings with Pura predates it. What remains is generalized awareness that Pura owns patents, and that is the theory *Wrinkl* rejected. The very opinion Pura cites, Opp. 11 n.1, dismissed the indirect and willful infringement claims on a second patent where knowledge was pleaded from public prosecution records and the defendant's sophistication: "If such a pleading were sufficient it would effectively support a finding of pre-suit knowledge for every patent." *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345-RGA, 2021 U.S. Dist. LEXIS 188085, at *16–17 & n.6 (D. Del. Sept. 30, 2021). Knowledge sufficed on the other patent there only because the complaint pleaded a specific email, to a specific executive, identifying the specific patent. *Id.* at *15–16. Nothing like that is pleaded here. At most, Pura's August 20, 2025 letter, ¶ 119, supplies notice of the '886 Patent from that date forward—but notice is not intent. Induced infringement requires facts showing the defendant "specifically intended" its customers to infringe. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The inducement allegations, ¶¶ 96, 106, 115, 149, still describe nothing but selling an app-controlled product—no instruction, advertisement, or user direction mapped to any claim. The contributory claims add a recital that the products have no substantial non-infringing uses, ¶¶ 98, 107, 116; reciting the statutory element is a conclusion, not a fact, *Iqbal*, 556 U.S. at 678, and *Bill of Lading* affirmed dismissal of contributory claims at the pleading stage on materially similar pleading. 681 F.3d at 1338–39. A diffuser operated manually, or without app scheduling, remains an obvious non-infringing use the Amended Complaint never grapples with.

**IV. THE TRADE SECRET CLAIMS REMAIN INSUFFICIENTLY PLEADED.**

    **A. Pura's inference cases address evidence, not pleading.**

    Pura defends its access-plus-competition theory with *Stratienko*, *StorageCraft*, and *CDC Restoration*. Opp. 14–16. Each is an evidentiary-sufficiency decision. *Stratienko* affirmed summary judgment for the defendant; its access-and-similarity discussion concerns what record evidence can reach a jury. *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005). *StorageCraft* was a post-trial appeal about the measure of damages where the defendant's disclosure of the secret was undisputed—"no one disputes that Mr. Kirby did at least that." *StorageCraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1185 (10th Cir. 2014). Here, everything is disputed and nothing concrete is pleaded. And *CDC Restoration*'s statement that "[a] jury can infer misappropriation of a trade secret from circumstantial evidence" is a summary-judgment rule, *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 30, 274 P.3d 317—from an opinion that otherwise cuts against Pura: pricing information readily ascertainable from customers is not a trade secret as a matter of law, *id.* ¶¶ 25–27, and use cannot do the work of establishing that a protectable secret exists, *id.* ¶ 22. None of these cases holds that access plus a competing product states a claim under *Iqbal*. At the pleading stage, courts dismiss trade secret claims that fail to identify the secrets with particularity and to allege how the defendant obtained or used them. *See You Map, Inc. v. Snap Inc.*, No. 20-cv-162, 2021 U.S. Dist. LEXIS 5581 (D. Del. Jan. 12, 2021) (dismissing DTSA claim), *adopted*, 2021 WL 327388 (D. Del. Feb. 1, 2021).

    **B. The slide deck does not cure the pleading defect.**

    Pura calls ¶¶ 56–57 an allegation of direct use. Opp. 14. Those paragraphs allege that an unidentified Investor Individual received an unspecified deck and later said Atmos's launch "was

inspired by the revenue figures" in it. Being inspired by the profitability of a market to enter that market is competition, not misappropriation. The allegation identifies no trade secret used, no product or decision it shaped, and no conduct by Knight at all. The companion inference—that Atmos's "rapid product development and market entry" must have relied on Pura's information, ¶ 66—is the kind of allegation that "encompass[es] a wide swath of conduct, much of it innocent." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Companies bring products to market quickly for many lawful reasons.

**C. The Sixth Claim still identifies no trade secrets.**

Pura answers the ¶ 180 problem by pointing to its incorporation paragraph, ¶ 178. Opp. 13 n.2. Incorporation does not fix the defect. The one paragraph in the UTSA claim purporting to identify "[t]hese trade secrets" lists Pura's security measures—permission settings, two-factor authentication, NDAs. ¶ 180. Reasonable secrecy measures and the secrets they protect are distinct statutory elements; pleading the former as the latter conflates them. And the incorporated DTSA categories, ¶ 167—Shopify data, the Ambassador Program Database, and "Pura's financial outlook and projections, marketing and growth strategies, customer data, and product developments"—sweep in essentially Pura's entire business. To the extent Pura again points to its Trade Secret Disclosure, Opp. 13, that document is outside the pleading. *Supra* § II.

**D. The disclaimer disposes of what is left.**

Pura now disclaims reliance on the inevitable disclosure doctrine. Opp. 15–16. Atmos takes Pura at its word: the allegations that the defendants' positions "led to and will continue to lead to" disclosure and that Knight has "necessarily used and disclosed" Pura's information, ¶¶ 173–174, 185–186, drop out as the inferences Pura disavows. What remains against Atmos is the

derivative theory addressed above and in Knight's reply, which Atmos joins and incorporates by reference. DUCivR 7-1(a)(4).

## V. CONCLUSION

For the reasons set forth above, the Court should dismiss the First, Second, Third, Fifth, and Sixth Claims for Relief against Atmos with prejudice.

DATED this 9th day of June, 2026.

Respectfully submitted,

KNH LLP

*/s/ Chad Pehrson*
Chad Pehrson (12622)
Nathan Gardner (19537)
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2026, a true and correct copy of the foregoing DEFENDANT ATMOS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT was served on all counsel of record via the Court's CM/ECF system.

/s/ *Chad Pehrson*